[No. 14419.   Department Two. — November 10, 1893.]

GEORGE SCHMITT, APPELLANT, v. CITY AND COUNTY OF SAN FRANCISCO, RESPONDENT.

DEDICATION OF STREET—REVOCATION—ESTOPPEL IN PAIS.—Where the dedication of a street or part of a street has not been accepted, or the property used by the public, it is purely a question of *estoppel in pais* whether it can be revoked or not. If no one has acted upon the offer in such a mode as to be injured by the revocation the owner may revoke the dedication, even though it be an actual dedication, and not a mere offer.

ID.—CUL DE SAC UPON MAP OF UNIMPROVED BLOCK—CONVEYANCE OF WHOLE BLOCK.—Where a *cul de sac* has been marked upon a recorded map of a tract surveyed into streets, blocks, and lots, and such *cul de sac* was established in a block which was entirely unimproved, the owner of the tract had a right to revoke the dedication or offer to dedicate the *cul de sac*, and a conveyance of the entire block accompanying it by a description making no reference to the *cul de sac*, or to any alleged street, amounts to a revocation, if the purchaser had no notice of any fact which would have estopped the grantor from revoking.

ID.—EFFECT OF SUBSEQUENT MAPS.—Maps made for the city subsequent to the revocation of the dedication cannot conclude the purchaser of the land or any one claiming under him, the land having become private property before such maps were made.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*F. J. Castelhun,* for Appellant.

*John H. Durst,* City and County Attorney, for Respondent.

TEMPLE, C.—This is an action to quiet title to portion of block 226 Western Addition to San Francisco. The defendant claims that it has been dedicated to the public use as a street. Whether it has or not is the only question involved.

The defendant had judgment, and plaintiff appeals from the judgment and from the refusal of a new trial.

It appears from the findings that in 1855 one Thomas Hayes owned a large tract of land within the city of

San Francisco, called the Hayes tract.    That in June, 1859, he caused the whole tract to be surveyed and subdivided into blocks and lots, extending through it the streets already existing in the city.    A map was made by Hayes showing these streets, blocks, and lots, and indorsed "Map of the Hayes tract, lots and blocks according to the official survey by M. Hoadley."    Upon this map Hayes indorsed his certificate, which contained the following: "I, Thomas Hayes, proprieter of the land as herein subdivided within the dotted lines indicated by magnetic courses in red ink, hereby declare this map for all time to come to be unalterable, and have this day filed the same in the recorder's office of the city and county of San Francisco for description and legal reference," etc. The certificate was dated June 10, 1859, and the map was filed on that day, and has ever since remained on file.

A section of this map was put in evidence, showing the tract in controversy and a part of the north and west lines of the Hayes tract.    (See following page for copy of map.)

The tract in controversy here appears as a *cul de sac*. It is contended that it forms a part of Elm street. Elm street does not appear on any official map—so far as the evidence shows—prior to 1866.    Hayes tract did not touch the supposed street at any other point.    The Van Ness map includes block 226, and according to it there is no street dividing block 226.    I find no evidence in the record that such street has in fact been opened and used at any point.    The official map of 1866, however, shows such a street and represents it as extending through block 226.

Hayes caused to be printed upon his map a notice that the property delineated would be sold at public auction at a stated time and place, and accordingly the greater part of the tract was sold, and Hayes deeded to the purchasers the lots according to the map.

April 26, 1862, the legislature passed an act entitled "An act to establish the lines and grades of the streets in the city and county of San Francisco," whereby a

board was constituted to survey all the streets and fix the lines thereof, and to make maps showing the width of all streets. Under this act surveys were begun which were completed, and maps made by another board created by an act passed in 1864. The maps and surveys

having been made and filed, the board of supervisors gave notice for three weeks, as required by statute, that the maps and surveys were filed and open for public inspection. Under the act any property-holder dissatisfied was authorized to file objecions, which should be

considered by the board of engineers, and afterwards the map, as finally passed by that board, should be reported to the board of supervisors, who were then empowered to approve the same, and if approved the map was to stand as the legal and official map of the city and determine the lines and grades of the streets. It is found that all of these requirements were complied with, and the map was duly approved January 30, 1866, and became and is the official map.

The tax-rolls and block books from the office of the assessor and tax collector were introduced in evidence for the fiscal year 1863-64 and succeeding years. The block books show the premises in controversy as a part of Elm street.

The description in the assessments and tax receipts, however, do not show, except by reference to the assessor's maps, that any part of block 226 was exempted from assessment and taxation. The court found from this evidence that the property had been exempt from taxation as a street since 1862.

June 7, 1862, Hayes sold and conveyed to L. L. Hawley all of block 226 which was within his tract, describing it as follows:

" Commencing at the northwest corner of Tyler and Laguna streets, running thence westerly along the north line of Tyler street to the northwestern boundary line of the Hayes tract; thence northeasterly along said boundary line to the south line of Turk street, thence easterly along the said line to the west line of Laguna street; thence at right angeles southerly and along the last said line two hundred and seventy-five feet to the point of commencement, being a portion of block No. 226, Western Addition, and a part of the Hayes tract."

This was the only sale or conveyance ever made by Hayes of any land in block 226.

This part of Elm avenue or street has never been used as a street. At the time of the conveyance a high ridge of sand covered the land in dispute and extended across Laguna street and into Jefferson square. There

C. Cal.—20

does not appear to have been any improvement in the block except a vegetable garden on Tyler street.

Hawley graded the portion purchased by her, including the land in controversy, as also Laguna street, and immediately inclosed her land, building a bulkhead along Laguna street the whole distance which still remains.

Do these facts show a dedication of the land to the public as a street which was irrevocable, and if not, did the deed to Hawley operate as a revocation?

It will not be disputed that the survey and map, accompanied by the solemn declaration of the owner, followed by sales and conveyances of a large portion of the property described by reference to the map, constituted, as to the owner, a complete dedication of the property designated on the map as streets. The property in question, although side lines were drawn which might indicate that it was intended to be a street, was not by name designated as such, and was not the continuation of any street. Since a street was subsequently laid out there, extending through the entire block, as well as other blocks, it is probable that such a street had been proposed. As to this property, the marks upon the map may be supposed to indicate a willingness on the part of Hayes to allow a street to be established there. Treating it as an offer, could he then withdraw it? In *Archer* v. *Salinas City*, 93 Cal. 43, it is said:

"When the owner of property which is within the limits of an incorporated city or town makes and records a map of such property by which he subdivides the same into blocks and lots bounded by streets which are continuations of other streets already laid out by the city or town, and sells and conveys the lots abutting upon those streets, he thereby dedicates to the public the streets so laid out by him as prolongations of other streets, as well as the other streets which are laid out upon such map intersecting and connecting the same; . . . . The property dedicated has become public property, impressed with the use for which it was dedicated,

and neither can the public divert it from that use, nor can it be lost by adverse possession. Nor is the effect of such dedication impaired by any delay in the use of the land for which it was set apart. . . . . Whether the owner, by making sales according to such map or designation, has made the offer with reference to other streets than those by which the lots sold are bounded is a fact that the court must determine from the circumstances of each case; . . . . The owner, after selling some of the lots according to such map, might either with the consent of the purchasers, or if he should himself repurchase all of the lots so sold, withdraw such offer at any time before the public had acquired any interest in the streets, either from formal acceptance or by actual user."

In other words, if the dedication has not been accepted or the property used by the public, it is purely a question of *estoppel in pais.* If no one has acted upon the offer in such a mode that they would be injured by the revocation, the owner may revoke the dedication, even though it be an actual dedication and not a mere offer.

This doctrine has been frequently announced by the courts, and, so far as I can discover, has never been questioned. In *Cincinnati* v. *White*, 6 Pet. 431, it is said: "After being set apart for public use, and enjoyed as such, and private and individual rights acquired with reference to it, the law considers it in the nature of an *estoppel in pais* which precludes the original owner from revoking such dedication." (See 2 Dillon, 744, note 1, where numerous authorities are cited to the same effect. Also Elliott on Roads and Streets, 91, 92, and note.)

Applying that principle to the case under consideration, I see no reason why a revocation might not have been made as to this property at the time Hayes conveyed to Hawley. It may be conceded that the purchasers from Hayes had a right to insist upon the entire scheme under which they were induced to purchase, so far as any benefit could possibly accrue to them there-

from, but they could have no interest in having a *cul de sac* established in a block which was then entirely unimproved. Until a business was established there, or improvements which they might be interested in having maintained, it must have been immaterial matter to those who owned no property in the block. (*Bridges* v. *Wyckoff*, 67 N. Y. 130.)

If at the time Hayes conveyed to Hawley he had a right to revoke the dedication or offer to dedicate the land in controversy, there can be no doubt that conveyance had that effect. The description made no reference to the alleged street, but conveyed it as part of the tract sold. If the map and other facts show an offer to dedicate only, a conveyance without reservation must amount to a revocation, unless the purchaser had notice of some fact which would estop the grantor from revoking. It is a proposal to donate, and, if the proposed donor transfers the property before it has passed to the donee to another it is no longer his to give.

The block map was entirely immaterial in any view. It could not conclude the property-owner. (*San Leandro* v. *Le Breton*, 72 Cal. 170.) At the time those books were made there was no pending offer to dedicate, and if there had been the assessor had no authority to accept for the public.

Nor do I think the engineer's map of 1866 can conclude the plaintiff.

The land at the time that map was made had become private property. It was affirmatively shown that no street or way existed at this point when the Van Ness ordinance was passed, and it was not so marked on the Van Ness map. Under such circumstances I can discover no respect in which the case differs in principle from *Whelan* v. *Boyd*, 93 Cal. 500. The opinion in that case, it is true, states that the land in that case was held under an alcalde grant, but that fact does not distinguish that case from this. In either case the title is from the same source, the pueblo or its successor, the city; and I do not understand that the city has reserved any right

with reference to lands acquired under the Van Ness ordinance, which would justify the appropriation of them without compensation, beyond those selected by the commission thereby provided for. The land in controversy was not so selected.

To this, it may be added, that it does not appear from what source Hayes derived his title.

The proposition, of course, is that the land was designated as a street on the engineer's map, and that notice was given requiring property-owners to come in and make objections, if any they had, to the proposed map as showing the streets and other public grounds claimed by the city, and the provision that the board of engineers should consider such objections, and might alter the map if so disposed, and that the map as finally approved should be the official map, and constitute evidence of streets, etc.

Even had there been no authority upon the subject, I think this map alone could not be held conclusive upon this subject. There has been, however, very little discussion of that matter in the briefs, and as it has been decided, it is not worth while to consider the matter further.

I think the judgment and order should be reversed and a new trial had.

Vanclief, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and a new trial ordered.

Fitzgerald, J., De Haven, J., Garoutte, J.