[Civ. No. 415.  Second Appellate District.—December 7, 1907.]

## JOSEPH E. MYERS and J. EDWARD MYERS, Respondents, v. CITY OF OCEANSIDE, Appellant.

ACTION TO QUIET TITLE—OFFER OF DEDICATION OF PARK—REVOCATION BEFORE ACCEPTANCE—SUPPORT OF FINDINGS.—In an action to quiet title to lands against a municipal corporation which claimed a dedication thereof by the predecessor of plaintiffs for a public park, where the evidence showed no express dedication, and no filing of any map having the park delineated thereon, and nothing beyond an implied offer of dedication by deeds bordering on a proposed park, which was revoked by inconsistent acts of private ownership, before any attempted acceptance by the city, which never surveyed or located its boundaries, and made no improvements thereon at any time, the findings for the plaintiff are sufficiently supported by the evidence.

ID.—EASEMENT OF GRANTEES—ESTOPPEL OF GRANTOR—PUBLIC NOT AFFECTED.—The fact that the original grantees of the patent had a private easement in the park described in their deeds, which might be enforced against the grantor, who was estopped to deny them such rights therein, did not affect the public, whose rights therein were revoked before acceptance by the city.

ID.—REVOCATION, HOW EVIDENCED.—If a description in deeds by a patentee, which referred to a public park, as delineated on old surveys not made by the patentee, which showed no park delineated thereon, could be construed as an offer to dedicate the park to public use, the filing of a subsequent map by the patentee, indicating no park thereon, and showing the same as private property, and his subsequent conveyance thereof to the grantor of plaintiffs in private ownership, showed a revocation of the offer by acts inconsistent therewith.

ID.—LATER ACTS OF CITY—REVOKED OFFER NOT REVIVED—ACCEPTANCE NOT SHOWN.—Later acts of the city, even if sufficient to show an acceptance of the dedication, could not operate to revive the re-

voked offer. But it is held that the later acts of the city were not of a character sufficient to show an acceptance, or to indicate an intention of the city authorities to carry out the purposes of the dedication.

ID.—QUESTION OF INTENTION—FINDING ON QUESTION OF FACT.—The question of intention is the controlling one in all matters of dedication, and it is a question of fact on which the finding of the trial court must be sustained, if there is any evidence to support it.

ID.—EFFECT OF QUITCLAIM DEED—TITLE CONVEYED.—A quitclaim deed is as effectual to pass the title of the grantor as a deed of bargain and sale, and may support an action to quiet title.

ID.—DISTRIBUTION OF ESTATE—TITLE OF PLAINTIFFS—EVIDENCE—DESCRIPTION—INVENTORY AND APPRAISEMENT REFERRED TO.—Where plaintiffs claimed title under a decree of distribution of the estate of the deceased grantee of the patentee, which referred to the inventory and appraisement thereof for purposes of description, the inventory and appraisement constituted competent evidence for that purpose.

ID.—ASSESSMENT OF PROPERTY FOR TAXES—AUTHORITY OF ASSESSOR—IMPROPER EVIDENCE FOR CITY.—The court properly rejected evidence for the city to show how the property was assessed on the assessment-roll of the city, after any implied offer of dedication had been revoked. Even if the offer was still pending, the assessor had no authority to accept the offer for the public, and his act could not conclude the property owner.

ID.—IMMATERIAL EVIDENCE—ESTOPPEL—REBUTTAL—HARMLESS ERROR. Where defendant introduced immaterial evidence without objection, he may be deemed estopped from objecting to the court's permission to the plaintiff to introduce evidence in rebuttal thereof. But where such rebutting evidence is also immaterial, the defendant could not be prejudiced by any error in its admission.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial. N. H. Conklin, Judge.

The facts are stated in the opinion of the court.

W. T. Belieu, L. E. Dadmun, and Dadmun & Belieu, for Appellant.

The fact that the city was not *in esse* when the deeds were made bounded by the park is immaterial, the rights being vested in the public. (*School District* v. *Heath,* 56 Cal. 478-480; *San Leandro* v. *Le Breton,* 72 Cal. 171-175, 13 Pac. 405;

*Smith* v. *San Luis Obispo,* 95 Cal. 463-470, 30 Pac. 591.)
The dedication was complete and irrevocable. (*Archer* v.
*Salinas City,* 93 Cal. 50-52, 28 Pac. 839; *Sussman* v. *San Luis
Obispo,* 126 Cal. 536, 59 Pac. 24; *Hall* v. *Kranffman,* 106 Cal.
452, 39 Pac. 756; *Helm* v. *McClure,* 107 Cal. 203, 204, 40 Pac.
437; *Schwerdtle* v. *County of Placer,* 108 Cal. 589, 41 Pac.
448; *Courrier* v. *Howes,* 103 Cal. 437, 37 Pac. 521; *Town of
Harpers Ferry* v. *Kaplan,* 58 W. Va. 982, 52 S. E. 492; *Hart-
ley* v. *Vermillion,* 141 Cal. 347, 74 Pac. 987; *People* v. *Myring,*
144 Cal. 359, 77 Pac. 975; 7 Current Law, 1099, 1100; *Eurcka*
v. *Gates,* 137 Cal. 89-93, 69 Pac. 850.)   A quitclaim deed is
of itself no evidence of title.   (1 Devlin on Deeds, 2d ed.,
sec. 27; 9 Am. & Eng. Ency. of Law, 2d ed., 104, 105; *Ander-
son* v. *Thunder Bay River Boom Co.,* 57 Mich. 216, 23 N. W.
776; *San Francisco* v. *Lavaton,* 18 Cal. 466-470, 79 Am.
Dec. 187; *Morrison* v. *Wilson,* 30 Cal. 344; *Cadiz* v. *Majors,*
33 Cal. 288, 289; *Anderson* v. *Yoakum,* 94 Cal. 228, 28 Am.
St. Rep. 121, 29 Pac. 500.)

Wright & Schoonover, for Respondents.

There is no such thing as a dedication between owners and
individuals, to which the public is not a party.   (*Prescott* v.
*Edwards,* 117 Cal. 301, 59 Am. St. Rep. 186, 49 Pac. 178;
*Sacramento* v. *Clunie,* 120 Cal. 29, 52 Pac. 44; *City of Ana-
heim* v. *Langenberger,* 134 Cal. 608, 66 Pac. 855; *Los Angeles*
v. *Kysor,* 125 Cal. 463, 58 Pac. 90.)   The question is simply
one of intention to dedicate to the public, and an offer to
dedicate may be revoked before there is any user by the
public or acceptance of the offer. (*Schmitt* v. *San Fran-
cisco,* 100 Cal. 302, 34 Pac. 961.)   A use of the tract for
picnic grounds does not show an acceptance by the public;
and where both an offer and acceptance may be implied, the
question of offer and acceptance is one of fact, and the finding
of the court on the question of fact, that there was no accept-
ance of the offer, will not be disturbed. (*Los Angeles* v.
*Kysor,* 125 Cal. 463, 58 Pac. 90.)   A quitclaim deed will pass
a fee simple title when the grantor has such title. (*Sullivan*
v. *Davis,* 4 Cal. 291; *Downer* v. *Smith,* 24 Cal. 114; *Car-
pentier* v. *Williamson,* 25 Cal. 154; *Lawrence* v. *Ballou,* 37
Cal. 518; *Graff* v. *Middleton,* 43 Cal. 341; *Rego* v. *Van Pelt,*

65 Cal. 254, 3 Pac. 867; *Spaulding* v. *Bradley,* 79 Cal. 450, 22 Pac. 47; *Taylor* v. *Opperman,* 79 Cal. 468, 21 Pac. 869.)

TAGGART, J.—This is an action to quiet title to one-half of a block of land in the city of Oceanside, county of San Diego, claimed by the defendant to have been dedicated as a public park by one Andrew J. Myers, the original owner by United States patent, and predecessor in title to the plaintiffs.

Judgment was for plaintiffs, and defendant appeals from the judgment and an order of the superior court denying its motion for a new trial.

The findings of the court were affirmative of the allegations of the complaint, which was in the usual form of a complaint to quiet title. The case made by the city is unlike that usually presented to show a dedication. The evidence establishes no express dedication, discloses no filing of a map displaying a park delineated thereon, and fails to show that any survey or location of the boundaries was ever made by the city. No permanent improvements were ever made upon the property to indicate that it was a public park, and it stands (according to the testimony of some of the witnesses), just as it has since 1883, all open, uninclosed, and crossed in various directions by teamsters at their pleasure, and in all respects the same as other unoccupied, unimproved property in and about Oceanside.

The offer of dedication relied upon appears as declarations in twenty-three deeds of lots in the Oceanside townsite made to various persons by said Andrew J. Myers, between August 11, 1883, and January 13, 1885. All of these refer to the "Lockling Survey" as shown by two different plats filed in the county recorder's office; one on June 11, 1883, and the other on October 13, 1883. Those referring to the former plat contain the clause, "together with an interest in Block 19 according to above plat as a public square forever"; and those referring to the latter contain the clause, "together with an interest in lots 7, 8, 9, 10, 11 and 12, in Block No. 19, according to above plat, as a public square forever." In some of the latter the term used is "public park" instead of "public square." These maps were not filed at the request of Myers or of anyone else claiming an interest in the land, and

no words of dedication, or delineation of the so-called public square or park, appear upon either of them. They differ materially as to the location and subdivision of block 19, and the lots claimed as a park did not appear upon the one filed June 11, 1883.

On July 1, 1885, a map of block No. 19, based upon a survey made by C. J. Couts, C. E., in June, 1885, was filed by Myers. This was the first map filed at his request, and was some six months later in date than the last of the twenty-three deeds above mentioned. It displayed all of block 19 as subdivided into building lots 50x100 feet, including the half block in question, which appears thereon as lots 7, 8, 9, 10, 11 and 12, but in no manner indicates any intention to dedicate any part of the block to park purposes.

On October 18, 1889, Andrew J. Myers granted to A. O. Wallace all his "right, title, and interest in the land described in a Patent," etc. (referring to a patent conceded to include the land in question), "except the block upon which I have filed a homestead, and any and all lands in said tracts heretofore conveyed by me." It is from Wallace that plaintiffs deraign their title. The city of Oceanside was incorporated the latter part of the year 1888, and it never at any time passed any formal resolution accepting the so-called dedication, and prior to the date of the deed to Wallace did no act tending to show an intent to accept a dedication. There are other and later acts of the city relied upon to show an acceptance by it of an offer of dedication by Myers, but no attempt is made to show additional assent upon the part of him or his grantee to the treatment of the offer as still open. These evidences of acceptance consist of entries in the minutes of the meetings of the board of trustees in which the term "park" is used in relation to the purchase and planting of trees, furnishing water to, and collecting rates from campers for the use of the "park" in the years 1897, 1901 and 1902. As to the action taken by the officers of the city under these minutes, there is some conflict in the evidence, it appearing by the testimony of some of the witnesses that the trees were not planted on the park, and that the arrangement and care of the campers was for the purpose of collecting water rates, and incidental to keeping a camping place in order for campers who might desire to come to Oceanside.

If it be conceded that the declarations in the private deeds were sufficient evidence to show an offer of dedication, the court was justified in considering the filing of the Couts map as evidence of a full and complete revocation or withdrawal of such offer so far as the public was concerned. That the easement created for the benefit of his grantees still existed, and that the grantor was estopped to deny them such rights in block 19 as he had expressly granted to them did not affect the public. The rights created by the deeds might be enforced by the grantees against Myers and his successors in interest whether there was or was not a dedication to public use (*Archer* v. *Salinas City*, 93 Cal. 43, [28 Pac. 839]), but considered in connection with the question of dedication the clauses creating the interest in block 19 were merely admissions on the part of Myers of an intention to dedicate. They did not constitute an express dedication, and were not evidence tending to show an express dedication.

There was not a complete dedication, as would have been the case if the deeds had been made to the city or to someone for the benefit of the public, or if the map filed at Myers' request had shown words of dedication on its face. In case of a complete dedication no acceptance is required, it being presumed from the benefits arising from the dedication. (*San Leandro* v. *Le Breton*, 72 Cal. 175, [13 Pac. 405].) It is important, therefore, to observe the distinction between a complete dedication and a mere offer of dedication. In the latter case there must be an acceptance, and until there is the owner may at any time revoke and withdraw the offer. Revocation may be evidenced in various acts inconsistent with the use for which it is claimed the land was dedicated. This may be by filing a map or plat upon which the property is delineated as private property, or by conveying the title of it to a third person without recognizing the easement. (*Hayward* v. *Manzer*, 70 Cal. 476, [13 Pac. 141] ; *Schmitt* v. *San Francisco*, 100 Cal. 308, [34 Pac. 961].) In the latter case unless the grantee expressly indicates an intention to keep the offer open, it will be presumed that he does not intend to so do. (*Forsyth* v. *Dunnagan*, 94 Cal. 441, [29 Pac. 770].) The owner may revoke until someone has acted upon the offer in such a mode that they would be injured by the revocation. (*Schmitt* v. *San Francisco*, 100 Cal. 308, [34 Pac. 961].)

A revocation before an acceptance having been shown, the whole question of dedication must be eliminated from the case in considering the findings. (*Prescott* v. *Edwards,* 117 Cal. 301, [59 Am. St. Rep. 186, 49 Pac. 178].) The filing of the Couts map, the conveyance of the land to Wallace without reservation, and the sworn declarations of Myers on the witness stand all tended to show an intention to revoke any offer of dedication that had been made or which could have been inferred from the deeds made by Myers, and were sufficient to support the finding of "no dedication."

The later acts of the city could not operate to revive the revoked offer, even if sufficient to show an acceptance. But they were not sufficient for this purpose. Use of the land for purposes of a highway and as a camping place by strangers are not within the purposes of the dedication contended for. There was nothing shown in the way of planting and maintaining shrubbery and trees on the land and a keeping of it as a "park" in the common acceptation of that term. No intention to carry out the purposes of the dedication is shown. Only such acts as tend to show an acceptance for the purpose indicated can be considered. (*Archer* v. *Salinas City,* 93 Cal. 43, [28 Pac. 839].) The question of intention is the controlling one in all matters of dedication, and it is one of fact, and the finding of the trial court in this respect must be sustained if there be any evidence to support it. (*City of Los Angeles* v. *Kysor,* 125 Cal. 463, [58 Pac. 90] ; *Anaheim* v. *Langenberger,* 134 Cal. 608, [66 Pac. 855].)

We cannot agree with appellant's contention that a quitclaim deed is no evidence of title. It was announced as the well-established doctrine in this state in *Graff* v. *Middleton,* 43 Cal. 344, that quitclaim deeds are as effectual to transfer title to lands as deeds of bargain and sale, and a decree quieting the title of a party claiming under a quitclaim deed was sustained in that case. That case has been frequently affirmed. (*Rego* v. *Van Pett,* 65 Cal. 254, [3 Pac. 867] ; *Spaulding* v. *Bradley,* 79 Cal. 456, [22 Pac. 47] ; *Taylor* v. *Opperman,* 79 Cal. 470, [21 Pac. 869] ; *Nidever* v. *Ayers,* 83 Cal. 42, [23 Pac. 192].)

While there are purposes for which the inventory and appraisement in the estate of a deceased person is not admissible as evidence, or at least is immaterial (*Nathan* v. *Dierssen,* 146 Cal. 63, [79 Pac. 739]), in the case at bar the decree of dis-

tribution in the estate of A. O. Wallace, deceased, through which plaintiffs claim title, referred to the inventory and appraisement in that estate for purposes of description. It was competent evidence for that purpose.

There was no material error prejudicial to defendant's case committed by the court in the forty rulings excepted to by it. Some of these are covered by the foregoing views of the court, and those not so disposed of are not especially urged in the brief. The most important of them relate to rulings rejecting testimony offered by defendant to show how the property was assessed on the assessment-roll of the city. This was entirely immaterial in the case as presented. It could not conclude the property owner. (*San Leandro* v. *Le Breton,* 72 Cal. 170, [13 Pac. 405].) At the time these books were made there was no pending offer to dedicate, and if there had been, the assessor had no authority to accept for the public. (*Schmitt* v. *San Francisco,* 100 Cal. 308, [34 Pac. 961].)

The testimony of the county assessor in this same connection was admitted without objection to show that the property had not been assessed to Myers for a number of years, and in response to this plaintiffs were permitted to introduce certificates of sales of some of the lots for taxes. Conceding this to have been error, it in no manner prejudiced the case of defendant, as that of plaintiffs was made independent of this evidence. Defendant's estimate of the admissibility of the testimony in this respect appears to be governed by the question, What is its effect? While one error cannot be held to offset another, the party introducing improper evidence may well be estopped to complain of the court's permitting the introduction of evidence at the request of the other party to rebut such improper testimony. If either party were claiming under a title acquired by adverse possession, the question whether or not the property was assessed, and to whom, and who paid the taxes, etc., might have been material, but no such title was attempted to be established here. The evidence introduced improperly was immaterial but not prejudicial.

The other exceptions do not require consideration; and the record showing no prejudicial error, the judgment and order appealed from are affirmed.

Allen, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 5, 1908. Beatty, C. J., dissented from such order.