# GARVIN COUNTY v. LINDSAY BRIDGE CO.

### No. 1694.   Opinion Filed May 14, 1912.

### (124 Pac. 324.)

1. **COURTS — Decisions Reviewable — Judgment on Appeal from County Commissioners.** An appeal lies to the Supreme Court from the judgment of a district court in a case appealed to it from a decision of a board of county commissioners.

2. **DEDICATION — Elements — Permission of Public Use.** Bridges built on used roads in the Indian Territory prior to statehood by a private corporation, organized for the purpose of building bridges, do not become public property, merely because the corporation permits the public to use them, pending an effort to sell them to the county in which they are situated.

3. **SAME—Intention.** The intention of the owner to devote his property to public use is a necessary ingredient of a valid dedication.

4. **COUNTIES—Indebtedness—Limitation.** A contract by a board of county commissioners to buy existing bridges for the sum of $6,000, payable in three yearly installments of $2,000 each, creates an indebtedness exceeding the income and revenue provided for the year of its creation, and is not valid without the assent of three-fifths of the voters of the county, as provided by section 26 of article 10 of the Constitution of Oklahoma.

(Syllabus by Rosser, C.)

*Error from District Court, Garvin County;*
*R. McMillan, Judge.*

From a judgment of the district court affirming an order of the County Commissioners of Garvin County in the matter of certain bridges of the Lindsay Bridge Company, the county brings error. Reversed and remanded.

*J. D. Mitchell,* Co. Atty., for plaintiff in error.

*J. B. Thompson* and *C. L. McArthur,* for defendant in error.

Opinion by ROSSER, C.   This is an appeal from the district court of Garvin county affirming an order or contract of

the board of county commissioners of Garvin county, by which they bound the county to accept from the Lindsay Bridge Company three bridges across the Washita river at the price of $6,000. The order was made the 6th day of January, 1909.

The appeal from the action of the board of county commissioners was taken upon the demand of seven taxpayers, under the provisions of section 1690, Comp. Laws 1909.

The first question to be determined is as to whether or not an appeal lies to this court from the decision of a district court sustaining the action of the board of county commissioners. Defendant in error contends that the appeal does not lie. Section 1690, Comp. Laws 1909, provides for an appeal to the district court from decisions of the board of county commissioners by any person aggrieved, including the county by its county attorney, upon filing a bond, conditioned to prosecute the appeal and pay costs. Said section further provides that the county attorney, upon the written demand of at least seven taxpayers of the county, shall take an appeal from any action of the board of county commissioners, where the action relates to the interest or affairs of the county at large, or any portion thereof, when he deems it to the interest of the county so to do, and that in such case no bond shall be required or given. It is contended that this section of the statute limits the right of appeal to the district court, and that, the right thus being limited, no appeal will lie to this court from the action of the district court.

Section 1693, Comp. Laws 1909, provides that the appeal taken from the board of county commissioners to the district court shall be docketed as other causes pending thereon and shall be heard and determined *de novo*. Section 1694 provides that the district court may make a final judgment and cause it to be executed, "or may send the same back to the board, with an order how to proceed," and may compel the board by mandamus to comply.

Section 6067, Comp. Laws 1909, provides "that the Supreme Court may reverse, vacate or modify a judgment of the district court or county court," etc.

No reason is perceived why an appeal will not lie from the district court to this court. In the case of *Crawford v. Board of County Commissioners of Noble County,* 8 Okla. 450, 58 Pac. 616, it seems to be conceded that such an appeal would lie.

In the case of *Allen v. County of Pittsburg,* 28 Okla. 773, 116 Pac. 175, an appeal from the district court to the Supreme Court was acted upon here without comment, and apparently without objection from any of the interested parties. It seems to be the settled practice of this court to entertain such appeals, and no reason is pointed out for refusing to take jurisdiction of them. See *Smith v. Board of Commissioners of Rogers County,* 26 Okla. 819, 110 Pac. 669.

The case of *Kerby v. County Commissioners of Clay County, Kansas,* 71 Kan. 683, 81 Pac. 503, is not in point. That was a case where suit was brought against a private individual in the name of the county, without the consent of the county commissioners. It was there held that the control of such litigation was vested in the county commissioners, and that the county attorney could not bring such an action without their consent.

Section 1690 was passed for the express purpose of protecting the taxpayers and citizens of the county against improper action by the commissioners, and was clearly intended to vest the right of appeal in the county attorney, when the requisite number of taxpayers requested it; and when the district court enters judgment on the appeal its judgment is appealable, just as is any other judgment of the district court.

The only difference in the first part of the section, giving the right of appeal to interested parties, and the second part, requiring the appeal to be taken on demand of seven taxpayers, is that under the first portion of the section a bond for costs of appeal must be given; while under the portion allowing the appeal upon demand of seven taxpayers no bond for costs is necessary.

It appears from the evidence that the Lindsay Bridge Company was incorporated for the purpose of building the bridges; and that the bridges were built just prior to statehood on exist-

ing public roads. It appears that an old bridge was torn down, and one of the new bridges built on or near the same site. There had formerly been a bridge on or near the site of another of the new bridges; but it had washed away some months before the new bridge was built. The bridge which was torn away when the new one was built was a toll bridge. The articles of incorporation of the Lindsay Bridge Company stated that the company was "formed for the purpose of building bridges and culverts as the company may see fit to construct, and work such roads as may be necessary for the satisfactory use of said bridges; to control and maintain said bridges in any lawful manner, either as free or toll bridges." The stock in the company was purchased by residents in the vicinity, upon the understanding that the bridges would be sold to the county at statehood, and that the amount they had paid would be returned to them. The bridges were built to be sold to the county, and they were opened to the free use of the public as soon as completed. A short time after statehood, the board of county commissioners informally agreed to buy them, and about a year afterwards made the formal agreement in question in this suit.

It is contended here that by building the bridges on or near public roads, and permitting the public to use them from the time they were built, the company dedicated them to the public, and that the company had nothing to sell at the time the board contracted to pay for them.

The intention of the owner to dedicate his property to the public use is a prerequisite of a valid dedication. 13 Cyc. 452, and authorities cited in notes 51 and 52; *Brown v. Oregon Short Line R. Co.*, 36 Utah, 257, 102 Pac. 740, 24 L. R. A. (N. S.) 86; *Myers v. City of Oceanside*, 7 Cal. App. 87, 93 Pac. 686; *People v. Dreher*, 101 Cal. 271, 35 Pac. 867. And whether or not he had such intention is one of fact to be determined from the evidence. Of course, in determining the questions, the acts of the owner are entitled to great weight; and if his acts show the intention to dedicate he cannot defeat the effect of his acts by a mere statement of his intention, made after the acts were

done. But in this case the acts of the company were entirely consistent with the statement of its agents that it did not intend to give the bridges to the county. At the time the bridges were built, there was no county in existence. Under the law existing in the Indian Territory prior to statehood, corporations could be formed, just as this one was, for the purpose of building bridges. 31 Stat L. 794; *Dukes v. McKenna*, 4 Ind. Ter. 156, 69 S. W. 832. The company, as soon after statehood as it reasonably could, began trying to sell the bridges to the county, and left them open to the use of the public with the understanding that the county would buy them. The promoters induced people to take stock upon the representation that the bridges would be sold to the county, and the money refunded. There is no evidence reasonably tending to show an intention to give the bridges to the county. The fact that the company permitted the public to use the bridges was not of itself a dedication. *Cochran v. Purser*, 152 Ala. 354, 44 South. 579; *West Point v. Bland*, 106 Va. 792, 56 S. E. 802; *Cooper v. Monterey Co.*, 104 Cal. 437, 38 Pac. 106; *Hartley v. Vermillion* (Cal.) 70 Pac. 273.

The next question is as to the power of the commissioners to make the contract. It appears that the bridges are necessary, and that the contract price is very reasonable. The company should be paid. But, notwithstanding the equities, the contract cannot be upheld, unless the board of county commissioners proceeded according to law in making the contract.

The contract of the board of county commissioners was to pay $6,000 for the bridges, to be paid in installments of $2,000 each, payable January 1, 1911, January 1, 1912, and January 1, 1913, respectively. Section 26 of article 10 of the Constitution provides that "no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor, in cases requiring such assent, shall any indebted-

ness be allowed to be incurred to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness: Provided, that any county, city, town, township, school district, or other political corporation, or subdivision of the state incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same." No election was held, as provided in this section, before the contract was entered into.

This section was before this court in the case of *Campbell v. State,* 23 Okla. 109, 99 Pac. 779; and it was there held that a contract for the building of a courthouse on the rental plan, by which twenty semiannual payments were to be made, incurred an indebtedness, within the meaning of the section, and that such a contract was illegal. This case contains a full discussion of the subject, and refers to numerous authorities. It is not necessary to go over the ground again in this opinion. That case is decisive of this.

If the statements of the record are true, the company should be paid for the bridges; and certainly the bridges remain its property until they are paid for. *Salt Creek Township v. Bridge Co.,* 51 Kan. 520, 33 Pac. 303. But if the Constitution may be ignored for the benefit of honest people with meritorious claims, grafters and rascals will use the precedent to obtain that to which they are not entitled.

The case should be reversed and remanded.

By the Court: It is so ordered.