[Civ. No. 1168.   Third Appellate District.—November 7, 1913.]

B. DAVIDOW et al., Appellants, v. ANNA E. GRISWOLD et al., Defendants and Respondents; JOHN A. ASPLUND et al., Interveners and Respondents.

PLEADING—COMPLAINT IN INTERVENTION—DENIAL FOR WANT OF INFORMATION.—In a suit to quiet title, where the matters involved are of such a character that the plaintiffs cannot hide behind the pretense of want of information, their answer to a complaint in intervention is not good if in this form: "These plaintiffs have no information upon the subject sufficient to enable them to answer all of the allegations contained in the complaint in intervention, and basing their denial upon that ground these plaintiffs deny," etc.

ID.—DENIAL ON INFORMATION OR BELIEF.—By such allegations the plaintiffs do not even bring themselves within the provision of the code permitting an answer upon the ground of want of "information or belief."

DEDICATION—STREETS AND PARKS—ESTOPPEL WHERE LOTS SOLD WITH REFERENCE TO MAP.—Where the owner of land has it surveyed and platted as a townsite, files in the recorder's office a map delineating streets and parks, sells lots all over the tract described by reference to the map and upon representations that the streets have been laid out and dedicated to public use, and the lots are purchased and improved in reliance upon these representations, equity will not thereafter permit him to deny the dedication of the streets and parks as against the purchasers and the public.

ID.—STATUTE OF LIMITATIONS—WHETHER BARS RIGHT TO USE STREETS.—The statute of limitations can be of no avail as against the right of the public to use the streets thus dedicated; and even if the dedication is considered available only to the large number of persons who purchased lots, there is sufficient evidence in the record to support the finding against the bar of their right by the statute.

APPEAL from a judgment of the Superior Court of Sonoma County and from an order refusing a new trial. Thomas C. Denny, Judge.

The facts are stated in the opinion of the court.

Walter H. Robinson, and W. F. Cowan, for Appellants.

U. S. Webb, Attorney-General, and Chas. M. Bufford, for Respondents.

BURNETT, J.—This is an action to quiet title and the main question is whether plaintiffs are estopped from denying the dedication of certain parks and streets as delineated on a map of the townsite of Los Guilicos, afterward known as Kenwood, in the county of Sonoma. There is little controversy as to the vital facts, most of them having been stipulated at the trial. It is not disputed that two maps were filed, one on the ninth day of August, 1887, entitled, "Map of the Town of Los Guilicos, Sonoma County, Cal.," and the other on the twentieth day of February, 1893, entitled, "Revised map of the town of Kenwood, formerly Los Guilicos, Sonoma

Co., California," and that the latter was a duplicate of the former except as to the name of the town.

It is admitted by appellants that, by reason of the filing of these maps, there was an offer of dedication of the property in controversy, but it is contended that the offer was not accepted and it was afterward withdrawn and revoked.

On the other hand, respondents claim that, by reason of the filing of these maps and the sale of many lots in accordance therewith, an acceptance of the offer of dedication was necessarily implied and that thereby the dedication became complete and beyond the power of recall or revocation. The common source of title is the Sonoma County Land and Improvement Company, and it was stipulated: "That on Jan. 30, 1887, Sonoma County Land & Improvement Company, then a corporation, became the owner in fee simple of those portions of subdivisions 6 and 7 of Los Guilicos Rancho, Sonoma County, lying south and west of the county road leading from Sonoma to Santa Rosa; that all the land delineated upon the maps introduced in evidence in this action is included within said portions of said subdivisions of said rancho.

"That between January 30, 1887, and October 18, 1894, said Sonoma County Land and Improvement Company executed and delivered to a large number of persons about 75 deeds to a large number of parcels of land in said townsite, describing them in nearly every instance as the same are numbered and indicated on the map filed August 9, 1887, and in such deeds made reference to said map, all of which deeds were, subsequently, recorded in the office of the county recorder of Sonoma County.

"That the chain of title through which plaintiffs acquired the property described in the complaint contains a number of deeds, wherein it is described by lot and block numbers, referring to the one or the other of the two maps of 1887 and 1893.

"That the Sonoma County Land & Improvement Company, on Jan. 24, 1890, executed and delivered a deed to the North Pacific Land & Improvement Company, its successors in interest, conveying all unsold lots in the townsite of Kenwood, and therein described them by lot and block number and referred to the map of 1887.

"That between Feb. 20, 1893, and Sept. 14, 1898, the Sonoma County Land & Improvement Company executed and delivered to some twenty different grantees deeds to a large number of parcels of land in said townsite, describing the same in nearly every instance by lot and block number, as they appear on the map filed Feb. 20, 1893, and in such deeds referred to such map, all of which deeds were later recorded."

These maps, it may be said, and the surveys therein delineated were màde by Preston R. Davis, county surveyor of Sonoma County, under the direction of the said land and improvement company, and the townsite as shown by said maps was laid out on the ground and indicated by appropriate monuments. The said company and its successor in interest, the North Pacific Land and Improvement Company, caused copies of said maps to be published in print and to be furnished to intending purchasers, and they represented to the purchasers of lots that the same was a true map of said townsite as the same has been laid out and dedicated to public use and, in making deeds to said purchasers, they described the lots with reference to the streets and avenues and block and lot numbers indicated on said maps, and the purchasers bought their lots in reliance upon said representations and said maps, and many of said purchasers and their successors in interest, upon the faith of said representations and said maps, placed expensive improvements upon their respective holdings.

We are justified in saying that all the foregoing facts are shown by the evidence, the stipulations of the parties and the admissions of the pleadings. Indeed, it is hardly necessary to go beyond the pleadings themselves. The said facts, with others, are set out in the verified complaints in intervention and the purported denial is so equivocal and evasive that plaintiffs could have no just cause for complaint if their answer were treated as an admission of the existence of the facts not covered by the stipulation. Their answer is in this form: "These plaintiffs have no information upon the subject sufficient to enable them to answer all of the allegations contained in the complaint in intervention and basing their denial upon that ground these plaintiffs deny," etc. The matters were of such character that the plaintiffs could not

hide behind the pretense of want of information. (*Zany* v. *Rawhide Gold Min. Co.*, 15 Cal. App. 373, [114 Pac. 1026].) Besides, in the absence of an averment to the contrary, we must assume that the plaintiffs *believed* the facts to be as alleged in the complaint in intervention. They did not even bring themselves within the provision of the code permitting an answer upon the ground of want of "information or belief." (Code Civ. Proc., sec. 437.)

If we may state it more concisely, we have, then, this situation: The owner of a tract of land has it surveyed and platted as a townsite. He has a map of it, upon which are delineated streets and parks, filed in the recorder's office. He sells lots all over this townsite, described by reference to this map, and, moreover, upon the positive representation that the streets have been laid out and dedicated to public use, and, in reliance upon these representations, the lots are purchased and improved. This may not be *dedication* in the strict acceptance of that term but the result is the same. The owner has voluntarily placed himself in a position where equity will not permit him to deny thereafter that the said streets and parks are as represented by him; and, independent of the statement that they have been dedicated to public use, the other acts of the owner, considered in connection with the said purchases under the conditions mentioned, would preclude the said owner from contending, at least as far as said purchasers are concerned, that they are not streets and parks. And if they are to be considered as really streets and parks when we regard the rights of the purchasers, it is difficult to understand how their *status*, would be changed when we regard the rights of the public generally.

We think the principles covering the case are clearly stated in *San Leandro* v. *Le Breton*, 72 Cal. 170, [13 Pac. 405], and *Archer* v. *Salinas City*, 93 Cal. 43, [16 L. R. A. 145, 28 Pac. 839].

In the former it is said: "It is settled law that where one owning land lays off a town or village thereon and makes a map of the townsite showing it to be divided into streets, alleys, blocks, and lots and then sells lots with reference to such map, he thereby makes an irrevocable dedication of the space represented on the map as streets to the use of the public. There are many cases to this effect, but only a few

need be cited. . . . And if there be public squares or plazas represented on the map, the same rule applies to them, and dedication thereof may be established in the same manner.'' Citing cases.

In the Archer case it is said: ''Dedication is an ultimate fact, dependent upon the establishment of other facts, and is to be found from the evidence presented to the court. (*Harding* v. *Jasper*, 14 Cal. 648.) It results from the acts of the owner of the land, coupled with the intent with which he does those acts. It may be express, and completed by a single act, as when the land is dedicated by deed, or it may be implied from a series of acts, as when the owner subdivides a tract of land into blocks and streets, and causes a map of such subdivision to be recorded, and sells the several subdivisions which front upon those streets.

Whenever the dedication is complete, the property thereby becomes public property, and the owner loses all control over it or right to its use. . . . If the dedication is complete by his act, whether express or implied, it is thereafter irrevocable by him, and the effect of such dedication cannot be qualified by any act or declaration thereafter made on his part. The property dedicated has become public property, impressed with the use for which it was dedicated, and neither can the public divert it from that use, nor can it be lost by adverse possession. Nor is the effect of such dedication impaired by any delay in the use of the land for which it was set apart. Such failure to make use of the land does not authorize the owner to resume possession. The public can thereafter appropriate the land to the use for which it was dedicated whenever convenience or necessity may suggest.'' A very large number of cases from other jurisdictions holding similarly is cited by respondents but we may forego specific consideration of them. In some, it is assigned as a sufficient reason for saying that the dedication is complete that the purchasers represent the public, that the latter is not a distinct class from the former, that the purchasers are as much a part of the public as those who use the streets for the purpose of travel and that they have equal authority to accept a dedication of the streets for the public.

Of course, it is not to be understood that the mere laying out of lots and making a map showing streets deprive the

owner of the right to use the property as his own. This would constitute at most an offer of dedication and an acceptance must follow to vest the public with a right which the owner cannot gainsay. The sale and purchase of the lots "describing the streets as boundaries constitute covenants with the purchasers that the streets are dedicated to their use and to the use of the public," and are sufficient proof of dedication.

Different courts, as already stated, have adopted different terminology to describe the situation involved in a case like this but it is probably more a difference in words than in doctrine.

The United States supreme court, in the case of *City of Cincinnati* v. *Lessees of White,* 6 Pet. 431, [8 L. Ed. 452], characterizes the principle as "in the nature of an estoppel *in pais* which precludes the original owner from making such dedication. It is a violation of good faith to the public and to those who have acquired private property with a view to the enjoyment of the use thus publicly granted."

It is virtually conceded by appellants that the contention of respondents is supported by their citations but it is insisted that the said California decisions were subsequently overruled and that they do not declare the law as it obtains now in California. We do not think the conclusion is warranted by a fair examination of the cases to which attention is invited. It is true that there are expressions found in some of these cases inconsistent with the statements that we have already quoted but it is quite apparent that they were not necessary to the decision.

The San Leandro case is criticised and its doctrine repudiated in *People* v. *Reed,* 81 Cal. 70, [15 Am. St. Rep. 22, 22 Pac. 477], but that in the latter the supreme court was confronted by an entirely different situation appears from the recital of the following facts: The map made of the property was never recorded; the part of the alleged street in controversy was never opened as a street, but for many years had been fenced and occupied by substantial and permanent buildings; no sales of lots thereon were ever made and there was no finding that the individuals who purchased the property in other parts of the alleged street had ever seen the map of the property or had any information at the time they purchased

that a street was laid out at the place in controversy. It was therefore properly held that the acts of the owner did not constitute an irrevocable dedication of the street, and it is to be observed also that as to some of the statements in the opinion this comment is made in the Archer case: "There is nothing decided in *People* v. *Reed* inconsistent with the foregoing principles, although there are certain expressions in the opinion in that case that may seem at variance therewith; but they were *obiter dicta,* or side remarks, and *unauthoritative* views of the justice who wrote the opinion."

The San Leandro case is, in the Archer opinion, approved in the following language: "The principles relative to dedication and an offer to dedicate which are laid down in that case are in accord with the law upon that subject, as well as with previous decisions in this state, and should have controlling effect in the present case."

The decision in *Schmidt* v. *San Francisco,* 100 Cal. 302, [34 Pac. 961], was grounded upon the proposition that the purchasers of lots "could have no interest in having a *cul de sac* established in a block which was then entirely unimproved and in which they owned no property," but it is conceded in the opinion that the purchasers from the original owner "had a right to insist upon the entire scheme under which they were induced to purchase, so far as any benefit could possibly accrue to them therefrom," and it was declared that "It will not be disputed that the survey and map, accompanied by the solemn declaration of the owner, followed by sales and conveyances of a large portion of the property described by reference to the map, constituted, as to the owner, a complete dedication of the property designated on the map as streets." This last remark describes the condition here and it is additional assurance of the soundness of respondents' position.

In *Sacramento* v. *Clunie,* 120 Cal. 29, [52 Pac. 44], the evidence is reviewed and, while conceding that it was probably sufficient to support a finding of dedication, it was held not sufficient to reverse a finding of no dedication. The peculiar and persuasive circumstances in that case are disclosed by the following quotation from the opinion: "In this case there never has been any acceptance upon the part of the city, by user, of the offer of dedication made by the parties filing the Ruth map. Forty years have gone by. During all this time

these streets have been barred from travel, and valuable and permanent improvements placed thereon. Under such circumstances, in the absence of user, it would seem that a direct and explicit acceptance upon the part of the city of an offer of dedication might well be demanded by the trial court before dedication as a fact would be found.''

In *City of Los Angeles* v. *Kysor*, 125 Cal. 463, [58 Pac. 90], it was held that the evidence was conflicting as to dedication and, furthermore, that ''the record of a map with the designation of streets and parks therein and the sale of lots by such map . . . cannot conclusively establish the dedication of a park designated thereon to public use,'' but that a finding of no dedication will be sustained ''where no public acceptance of the offer is established and the evidence tends to show a revocation of the offer.''

*City of Anaheim* v. *Langenberger*, 134 Cal. 608, [66 Pac. 855], was a similar case and it was said therein: ''By the facts of this case, there appears to be nothing more than an offer to dedicate the plaza to the public. The offer was made more than thirty years before this action was brought. During that entire time the city never made a sign that it accepted the offer. No formal acceptance was entered; no implied acceptance is shown. The first intimation the city gave of its claims to the plaza is found in the commencement of the present action. Certainly, the commencement of this action can hardly constitute an acceptance of an offer to dedicate made twenty years before.''

In the three foregoing cases it is to be noticed that the actions were brought by the city in each instance and that the vital question involved was whether there was support for the finding of ''no dedication to the public.''

The judgment against the plaintiff in *City of Monterey* v. *Malarin*, 99 Cal. 290, [33 Pac. 840], was affirmed on the ground, as stated by the supreme court, ''that the owner never intended or offered to dedicate to the public the strip of land referred to for a public use, or ever acquiesced in or assented to the use thereof for such purpose, or ever had any knowledge of such use by the public, or that the municipal authorities ever performed any act or asserted any right whatever thereto.''

In *Prescott* v. *Edwards,* 117 Cal. 298, [59 Am. St. Rep. 186, 49 Pac. 178], the judgment was in favor of plaintiff for a private right of way, the finding being therein that there was no dedication of the land to the public as a highway. The judgment was affirmed on the ground that the defendant, at the time plaintiff purchased his lot, pointed out to the latter the strips of land fronting on said lot as streets and that, under the circumstances, it would be a gross injustice for the owner to deprive the purchaser of the privilege of using such strips of land as streets, and it is said: ''The decisions of this court, where it is declared that as to the purchase of lots adjoining platted streets such streets are dedicated by the owner, mistake the true doctrine in form rather than in substance, for it is the doctrine of estoppel *in pais* that gives the vendee his remedy, and prevents the practice of injustice by the vendor.''

In *Myers* v. *City of Oceanside,* 7 Cal. App. 87, [93 Pac. 686], the evidence showed ''no express dedication, and no filing of any map having the park delineated thereon and nothing beyond an offer of dedication,'' and it was held that the evidence was sufficient to support the conclusion of the trial court that there was no dedication to the public. It was declared that ''the question of intention is the controlling one in all matters of dedication and it is a question of fact on which the finding of the trial court must be sustained if there is any evidence to support it.''

In *Wolfskill* v. *Los Angeles County,* 86 Cal. 412, [24 Pac. 1094]; *People* v. *Marin County,* 103 Cal. 223, [26 L. R. A. 659, 37 Pac. 203]; and *Los Angeles* v. *McCollum,* 156 Cal. 148, [103 Pac. 914], the evidence was reviewed by the supreme court and held in each instance to be sufficient to support the claim and finding of dedication.

We conclude that there is ample authority and sound reason for holding that there was here a complete dedication, or what is equivalent thereto, of said streets and parks.

There has been no abandonment by the public of their right and the surrender by the owner of these public places for the use of the people is still operative and effective for the purposes which, as we have already shown, were clearly intended and designated.

The statute of limitations was, indeed, urged by appellants but, of course, this could be of no avail against the public, and if we consider the dedication available only to the large number of persons who purchased lots, there is sufficient evidence in the record to support the finding against the bar of the statute.

Another finding which is assailed by appellants is that interveners, John A. and Anne Kirstine Asplund, are the owners of an easement of way along a certain road known as Kenilworth Avenue. The claim to the easement was based upon an asserted title by prescription and we think the court was justified in upholding it. Mr. John Asplund testified: "Kenilworth Avenue starts from Mervyn Avenue and goes across Sonoma Creek and past my house up in the cañon, and from there it extends through. There are several property owners along the road, among them Pederoncelli, and Mrs. Knell and Parker. It was there ever since Kenwood started in 1887 or 1888. Mr. Rohrer lived up there in the cañon and built a road. It was used by the different people who had to go up there. The road would be a mile long, probably. I have ridden over it thousands of times, sometimes every day, going to get the cows. No one has ever objected to my passing over it. There was objections some fifteen years ago; Mr. Crozier lives on it, and he put a gate across the road, and Mr. Parker sued him, and Supervisor Thompson cut the wire, and it has been open ever since. I have graded and graveled that part of it from Mervyn Avenue up to my house on my own account. It is used by a great many people right along every day." The only fair inference from the foregoing is that the use of the road was under a claim of right. The manner of the use is the best evidence of its character. Asplund having used the road all these years as though he had the right to do so, the conclusion rationally follows that he intended to assert his adverse claim and that his acts were indicative of a purpose to maintain it.

Some other questions are discussed but we deem it sufficient to say further that, in our opinion, there is no prejudicial error shown by the record and we think the judgment and order should be affirmed, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court. after judgment in the district court of appeal was denied by the supreme court on January 6, 1914.