## BOARD OF COM'RS OF MUSKOGEE COUNTY et al. v. DUDDING.

No. 8553—Opinion Filed Sept. 26, 1916.

Rehearing Denied Oct. 11, 1916; Second Rehearing Denied Dec. 19, 1916.

(160 Pac. 109.)

**Injunction — County Commissioners — Equitable Jurisdiction—Remedy at Law.**

By section 1, ch. 117, Sess. Laws 1915, p. 205, any person aggrieved at the action of the board of county commissioners in allowing and ordering paid any claim against the county, may appeal from the decision of the county commissioners to the district court upon filing a bond as therein required; and such remedy is plain, speedy, and adequate. and equitable relief by injunction against the apprehended action of the commissioners in the premises cannot be had.

(Syllabus by Bleakmore, C.)

Error from District Court, Muskogee County; W. H. Brown, Judge.

Action by J. R. Dudding against the Board of County Commissioners of Muskogee County and others. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Fred P. Branson, Co. Atty., W. W. Noffsinger, and Y. P. Broome, for plaintiffs in error.

Gibson & Hull, Rutherford & Cosgrove, and S. H. Lattimore, for defendant in error.

Opinion by BLEAKMORE, C. In Muskogee county there is no courthouse erected by

the county. In August, 1912, the board of county commissioners entered into a lease contract with the Courthouse Building Company for the use of five upper floors of a certain eight-story building for courthouse purposes, for a term of ten years, at an annual rental of $18,000. The judges using the courtrooms provided for by the terms of the contract, approved the same; and the county has since occupied these quarters. Such rental was paid for the two succeeding years. In March, 1915, the county commissioners notified the Courthouse Building Company, and the owners of at least one other building in the city of Muskogee, to submit bids for the furnishing of quarters for courthouse purposes for the ensuing fiscal year; and pursuant to negotiations responsive to such notice, the Courthouse Building Company let the same five floors of its building to the county for that year at a rental of $15,000. In March, 1916, similar notices were given by the commissioners to the Courthouse Building Company and to the owners of the Metropolitan building. The owners of the last-mentioned building thereupon offered to let the five upper stories of their building and certain other space, to be used for the various courtrooms, to the county for courthouse purposes for the fiscal year beginning July 1, 1916, at a rental of $11,000. The Courthouse Building Company having ignored the notice received by it, the county commissioners, on May 2, 1916, entered into a contract with the owners of the Metropolitan building in accordance with the terms of their offer. On May 31, 1916, the judge of the superior court of Muskogee county advised the county commissioners that he had examined the plans of that portion of the Metropolitan building to be used for courtrooms as contemplated by such contract, and also the building itself, and was convinced that suitable courtrooms could not be provided for the various courts; that he had learned that the present quarters could be secured for only $1,000 more than the rental of the proposed quarters in the Metropolitan building; that the employes in the present location would in his judgment save more than $1,000 in efficiency, to say nothing of the inconvenience and cost of moving, et cetera, and stated that he was unable to approve the contract.

On May 24, 1916, the Courthouse Building Company having learned of the execution of the contract between the commissioners and the owners of the Metropolitan building, filed with the county clerk its offer to let that portion of its building occupied by the county

at a rental of $12,000 for the following fiscal year.

On June 5, 1916, the commissioners, perhaps without knowledge of the offer of the Courthouse Building Company, but in any event without regard thereto, entered into what is termed a supplemental contract with the owners of the Metropolitan building, by the terms of which it was agreed that if the judges of the various courts were not satisfied with the courtrooms after the same were completed and arranged as provided in the original agreement, and declined to approve the same, the county should pay $9,000 for that portion of the building to be used as quarters for other officials.

The courtrooms in the Metropolitan building not being completed and ready for occupancy were not submitted for inspection to the various judges presiding over the courts for whose use they were contemplated, nor was the contract therefor submitted to them for approval. But, on June 20, 1916, J. R. Dudding, a resident taxpayer of Muskogee county, commenced this action against the board of county commissioners, seeking to enjoin the removal of the county property and offices from their present location to the Metropolitan building.

On July 10, 1916, upon a hearing, defendants were enjoined from removing or causing to be removed any of the offices of the county officials, and the furniture, fixtures, books, and records of the county to the Metropolitan building until further order of the court, and from this order defendants have appealed. Evidence of the comparative suitableness of the two buildings for courthouse purposes was excluded by the trial court.

It is contended by the plaintiff that the contract with the owners of the Metropolitan building was fraudulently, arbitrarily and capriciously entered into by the board of county commissioners.

The evidence disclosed that the space in the Metropolitan building intended for use as courtrooms under such contract was from 37 to 43 per cent. of the entire space provided for all purposes; and it is argued that the division of the rental under the supplemental contract—$2,000 for the courtrooms and $9,000 for the remainder—is so palpably disproportionate as to constitute fraud on its face, and that such unequal division was made for the express purpose of depriving the judges of the various courts of the free exercise of independent judgment and discretion in the approval or rejection of the quarters provided for their courtrooms under the terms of such contract.

Plaintiff below in his brief says:

"Unless prevented by this injunction, these plaintiffs in error, with the exception, perhaps, of Mr. Strahorn, will proceed to move into the Metropolitan building the county offices, including, unless prevented by other injunction proceedings, the office of the court clerk, with all the records, papers and furniture of the courts; and under such circumstances we could not reasonably expect our judges to feel free to exercise that inde pendence of choice and action which has been a tradition of the American judiciary and the sacred preservation of which every interest of the public demands. It means, further, that if the courts shall refuse to bow in submission to the arbitrary will of these commissioners and shall exercise their right to choose their own quarters there will be forced upon this defendant in error and the other taxpayers of Muskogee county, the burden of a double and greatly increased rental, due to the arbitrary, capricious, and fraudulent action of these commissioners in making the rental contracts they have."

By the statute it is provided (section 1617. Rev. Laws 1910):

"In any county where there is no courthouse or jail erected by the county, or where those erected have not sufficient capacity, it shall be the duty of the board of county commissioners to provide for courtroom, jail, and offices for the following named officers: Sheriff, treasurer, register of deeds, district clerk, county clerk, county attorney, superintendent of public schools, and county judge, to be furnished by the county in a suitable building or buildings, for the lowest rent to be obtained at the county seat, or to secure and occupy suitable rooms at a free rent within the limits of the county seat or any of the additions thereto, until such county builds a courthouse. They shall also provide the courts appointed to be held therein, with attendants, fuel, light, and stationery, suitable and sufficient for the transaction of their business. If the commissioners neglect, the court may order the sheriff to make such necessary provision, and the expenses incurred by him in carrying the order into effect, when certified by the court, shall be a county charge.

"Section 1618. The power to rent courtrooms shall only extend to such rooms as the court using the same may approve."

It is contended by the defendant: (1) That the plaintiff below is not the real party in interest; (2) that the plaintiff is not entitled to relief by injunction. However laudable the interest manifested by the plaintiff in the matter may be, our views are not in harmony with the proposition advanced by him, namely, that he as a taxpayer may invoke the jurisdiction of a court of equity to relieve the judges from the alleged possible baleful effects consequent upon the exercise of statutory authority, lest their discretion

be subverted, and their actions coerced by the artful designs of a board of Machiavelian commissioners.

It is clear that the only possible interest plaintiff, as a taxpayer, could have in the removal of county property and offices from one building in the city of Muskogee to another, is in the increased amount of taxes to which it is alleged his property would be subjected by reason of the payment of a greater rental.

It is obvious that the county commissioners were acting within the scope of their authority and performing a duty intrusted to them by statute in providing quarters for the use of the county officials. The law vested in them the discretionary power to select such quarters at the lowest rent to be obtained; and this, it appears, they have attempted to do.

If, however, the contention of the plaintiff is correct, and it may be reasonably apprehended that the board of county commissioners will audit and allow claims for an excessive rental, the plaintiff has an adequate remedy at law, under the provisions of section 1, ch. 117, Sess. Laws 1915, which provides:

"From all decisions of the board of commissioners, upon matters properly before them, there shall be allowed an appeal to the district court by any persons aggrieved, including the county by its county attorney, upon filing a bond with sufficient penalty, and one or more sureties to be approved by the county clerk, conditioned that the appellant will prosecute his or her appeal without delay, and pay all cost that he or she may be adjudged to pay in the said district court; said bond shall be executed to the county, and may be sued in the name of the county upon breach of any condition therein: Provided, that the county attorney, upon the written demand of at least fifteen (15) free holders of the county, shall take an appeal from any action of the board of county commissioners when said action relates to the interests or affairs of the county at large or any portion thereof, in the name of the county, when he deems it to the interest of the county so to do; and in such case no bond shall be required or given and upon serving notice provided for in the next section the county clerk shall proceed the same as if a bond had been filed."

In Black et al. v. Geissler et al., 58 Okla. 335, 159 Pac. 1124, a suit by a taxpayer seeking to enjoin the county commissioners, members of the excise board, county assessor, county treasurer, and county registrar from the performance of certain acts devolved upon them by the registration law, wherein it was alleged that unless restrained the de-

fcndants would allow and pay out large sums of money upon the order of the registrar for supplies furnished upon his order, for carrying into effect the provisions of the act, and would incur additional expense and let other contracts for supplies, and that the county excise board would include the same in the estimate for taxes of the county which taxes would be collected by the county treasurer, all without authority of law, et cetera, it was held:

"Should claims for said alleged illegal expenses be presented to and allowed by the board of county commissioners, the plaintiff would have an adequate remedy in the premises by an appeal from the action of the board to the district court, upon giving bond as required by section 1, ch. 117, Sess. Laws 1915, p. 205, amending section 1640, Rev. Laws 1910. Having a complete and adequate remedy at law under this section, plaintiff was not entitled to relief by injunction against any apprehended action of the board of county commissioners in the allowance of said claims. Smith et al. v. Board Com'rs, 26 Okla. 819, 110 Pac. 669; Fast et al. v. Rogers, 30 Okla. 289, 119 Pac. 241; Garvin County v. Lindsay Bridge Co., 32 Okla. 784, 124 Pac. 324; Turner et al. v. City of Ardmore et al., 41 Okla. 660 [130 Pac. 1156].

It is unnecessary to advert to other phases of the case presented by the briefs. The question of the enforceability of the contract between the county commissioners and the owners of the Metropolitan building is not properly determinable in the case before us.

The judgment of the trial court should be reversed, and the cause remanded.

By the Court: It is so ordered.