TOWN OF GROVE v. HASKELL, *Governor, et al.*

No. 583.   Opinion Filed June 27, 1911.

Publication Withheld Until December 19, 1911.

(116 Pac. 805.)

1.   **STATUTES—Construction.**   When the literal enforcement of a statute would result in great inconvenience or lead to consequences which are absurd and which the Legislature cannot be held to have contemplated, the courts are bound to presume that such consequences were not intended, and to adopt a construction which shall promote the ends of justice, and avoid the absurdity.

2.   **COURTS — Reference — Supreme Court — Original Jurisdiction — County Seat Contests.**   Under the provisions of section 16, art. 4, c. 31, p. 385, Sess. Laws 1907-08, conferring on the Supreme Court exclusive original jurisdiction over controversies arising in county seat contests, the Supreme Court has inherent authority to appoint a referee with power to hear the case and report the evidence with his findings of fact and conclusions of law, the report thus made to be given every reasonable presumption of being correct.

3.   **COUNTIES—County Seat Election—Rejection of Ballots.**   Where the electors at a county seat election, after having passed the challengers and before given a ballot, permitted the clerks to fill out a statutory form of affidavit which they signed and delivered to the election commissioners with the intent of having the same uttered and published as true and on which they received the blank ballots, the said affidavit will be deemed complete in all particulars, and the ballots which the electors so received, prepared, and cast will not be rejected for the reason that the officers failed to require the electors to raise their hands and go through the form of taking the oath, or for the reason that the entire contents of the affidavits were not restated to the electors on the occasions when the officer formally swore them.

4.   **SAME — County Seat Election — Irregularities.**   Irregularities shown to have occurred on the holding of an election which do not appear to have affected the final result, nor to have cast substantial doubt thereon, will be deemed immaterial.

(Syllabus by the Court.)

Bill by the Town of Grove against C. N. Haskell, Governor, and others for an injunction.   Judgment rendered.

*Ad. V. Coppedge, W. H. Kornegay,* and *J. G. Austin,* for plaintiff.

*Wm. P. Thompson, Bailey & Wyand,* and *Owen & Stone,* for defendants.

DUNN, J. This is an original action, a county seat contest, brought in this court under and by virtue of the terms of an act of the Legislature. Section 16, art. 4, c. 31, p. 385, Sess. Laws 1907-08. The election was held December 8, 1908, and the issues and the pleadings filed in the case were settled in an opinion by this court dated September 14, 1909. *Town of Grove v. Haskell et al.,* 24 Okla. 707, 104 Pac. 56. A referee was thereafter appointed to hear the evidence and report the same to this court with his findings of fact and the conclusions of law. After taking the testimony of all the witnesses produced, and considering the arguments of counsel, the referee duly made his report, finding from the evidence that the place called Jay had received a majority of the votes cast, and was therefore entitled to the county seat of Delaware county. To the findings of fact and conclusions of law made by the referee counsel for the plaintiff have filed a number of exceptions, which in their brief they have argued under three heads, as follows: First, did the misrepresentations of the committee representing Jay as to the location of the place result in disqualifying it from receiving credit for the votes cast for it, or any of them; second, how far the voters may disregard the provisions of the statute in regard to swearing to the affidavits which were to be made prior to their receiving the ballots, and did their acts in this regard result in invalidating their votes; and, third, do the irregularities shown in the opinon (*Town of Grove v. Haskell, supra*), and in other instances shown by the evidence, in the aggregate, cast such doubt upon the integrity and result of the election as to render it void. A preliminary question, however, was submitted on the occasion of the oral argument, and, while counsel for neither party have briefed the same, we will notice it before taking up for consideration the questions presented in the brief.

Section 16, art. 4, c. 31, p. 385, Sess. Laws Okla. 1907-08, provides, in substance, that exclusive original jurisdiction is con-

ferred upon the Supreme Court over all controversies which may arise by reason of county seat elections, and that any city or town being a candidate for the location of any county seat shall have a right to a hearing before the Supreme Court upon application filed and presented within thirty days after such election. If it is the contention of counsel that the jurisdiction herein conferred could be exercised by the court alone and that it was not competent to submit the trial of the cause to a referee to have him take the evidence and report the same with his findings of fact and conclusions of law, we cannot agree with such contention. It cannot be conceived that it was the intention of the Legislature that this entire court or a quorum thereof should actually sit and hear all of the evidence introduced in all of the different county seat contests for which this act made provision. If such a construction were admitted, it would have resulted in virtually destroying its appellant character during the several years in which these contests have been waged; and where such a result would follow, being so extreme and unreasonable and so destructive of the very purposes for which this court is organized, it is not possible to believe that such was within the contemplation of the Legislature.

It is a fundamental rule of construction that where an act is susceptible of two constructions, one of which, while it would follow the plain language of the act, yet would produce unreasonable and absurd results, and the language is susceptible of another reasonable construction free from such consequences, the latter will be held to be the one within the contemplation of the Legislature, and not the former. *People ex rel. Keeney v. City of Chicago,* 152 Ill. 546, 38 N. E. 744; *People v. Marshall,* Gilman, (Ill.) 672; *Bryan v. Buckmaster,* Breese (Ill.) 408; section 363, Lewis, Sutherland, Statutory Construction (2d Ed.)

However, the report of the referee appointed to take the evidence and report the same to this court with his findings of fact and conclusions of law would not be conclusive on either. It should and would be accorded every reasonable presumption of being correct, with the burden on the party attacking it, but to be freely set aside by the court if found to be incorrect. *Camden*

*v. Stuart et al.,* 144 U. S. 104, 12 Sup. Ct. 585, 36 L. Ed. 363; *Girard Life Insurance A. & T. Co. v. Cooper et al.,* 162 U. S. 529, 16 Sup. Ct. 879, 40 L. Ed. 1062. This procedure and construction will meet the demands of the statute and be in effect a hearing before the court.

Considering now counsel's first contention, to wit, that the misrepresentations of the committee representing Jay as to its location were such as to disqualify and defeat it, notwithstanding the fact that it had received a majority of the votes cast, the finding of the referee thereon is as follows:

"It is disclosed by the testimony in this case that there was no house, building, or other thing to mark the location of the place called Jay, except that ten acres of ground had been surveyed into lots and blocks and streets and alleys, and that said plat was recorded in the office of the register of deeds of Delaware county. But there is no proof to show that any voter was deceived or misled. Many of the voters may have been ignorant as to the exact location of Jay, but there is no proof to indicate that any one voted for Jay under the impression that it was located at another place than its true location. It is true the committee representing Jay circulated a handbill in which they refer to Jay as being in the center of the county, but it is disclosed by the proof that the land platted as the townsite of Jay is very near the center of the county, one witness saying that it is within 300 yards of the exact center of the county. The proof also shows that before the election on December 8, 1908, there was a picnic held on the townsite of Jay which was attended by a crowd variously estimated at from two to three hundred to one thousand people; but a public speaking was held at said picnic, and also some town lots were sold, and it appears that the committee representing Jay was quite active throughout the campaign in advertising the townsite of Jay and trying to acquaint people with its location and its advantages. I therefore find from the proof that the committee representing Jay did not mislead or deceive the people as to the location of the townsite of Jay, and that the voters did not cast their votes for Jay under the mistaken belief that it was some other location."

In the opinion referred to—*Town of Grove v. Haskell et al., supra*—this court, in narrowing the issues, stated as one of them the question of whether the electors, without their fault, were innocently misled or mistaken as to the locality of Jay through the

fault of its committee, and that they voted for it under the mistaken belief that it was in fact located in another place. From the facts found by the referee and from the conclusions drawn as noted above, it will be seen that the committee did not mislead or deceive the people as to the location of the townsite of Jay, nor did the voters cast their votes therefor under the mistaken belief that it was located at some other place. It is not denied that there is evidence amply sufficient to support the findings of the referee, and an examination of all the evidence to which our attention has been called convinces us that his conclusion is correct. Therefore the finding by the referee that while many of the voters may have been ignorant as to the exact locality of Jay, there was no proof to indicate that any one voted for Jay under the impression that it was located at any other place than its true location, being found to be correct, finally determines this issue against plaintiff.

The question next presented is determined by this court in the case of *Town of Checotah v. Town of Eufaula, infra,* 119 Pac. 1014. The issues and the facts are, for the purpose of consideration and construction, identical. Two precincts are here assailed on the grounds that the electors did not comply with the mandatory requirements of section 12 of the act of the Legislature of 1907-1908, referred to above, and found at page 382 of the said Laws, and which reads as follows:

"Every person desiring to vote at such special election, after having passed the challengers whose duties shall be the same as prescribed by law governing any general election, and being admitted to the room shall, before being given a ballot, permit the clerks to fill out an affidavit and said intended voter shall subscribe and swear to said affidavit before the said special election commissioner, after which he shall be given a ticket and permitted to prepare same and deliver said ballot to said special election commissioners who shall, in the presence of said voter, deposit said ballot in the proper ballot box, and shall deposit the said affidavit in the box provided for that purpose. The form of the affidavit required of all persons presenting themselves to vote at such special election shall be substantially as follows:

"State of Oklahoma, County of_____ss.
"_____, of lawful age, first being duly sworn,

upon his oath deposes and says: That he is a male citizen of the United States or is of Indian descent, native of the United States, is over the age of 21 years_____white_____colored _____, that he has been for one year last past a *bona fide* resident of said state, of said county six months, and in_____ precinct 30 (thirty) days next preceding this date; that he came to his present residence from_____, and is a legally qualified elector in said precinct on this day and has not voted in said election.

"_____

"Subscribed and, sworn to before me this_____day of _____, A. D. 19__

"_____

"Special Election Commissioner."

At Beck's schoolhouse precinct, it was charged that the special election commissioner did not require the voters to swear to the affidavits, that he required them to hold up their hands and asked them some oral questions as to their age, time of residence in the state, county and precinct, and then allowed them to sign the paper presented to them without in any way swearing the electors. The method adopted at this precinct was shown by the testimony of the commissioner, wherein he stated: That he required each voter to hold up his hand, sometimes swearing two or three at one time; that he stated to them, "You and each of you solemnly swear that you have lived in the state of Oklahoma twelve months last past, that you have resided in Delaware county six months and Beck's schoolhouse precinct thirty days, and that you are a legal and qualified voter entitled to vote in this election." That he then asked them if they were willing to sign an affidavit to that effect. Whereupon he turned them over to the clerks to get their signatures. He also stated:

"I signed the affidavits in advance. I did not read the affidavits to the voter word for word. I just gave him what I thought was the substance of the affidavit. I gave the substance of the affidavit, and then asked the voter if he was willing to sign an affidavit to that effect."

On this point the referee found:

"I am of the opinon that there was a substantial compliance with the law at this precinct, and that the affidavits as above indicated are legal. Am further of the opinion that the fact that the

special election commissioner signed the jurats to these affidavits before the opening of the polls does not affect their validity, as the jurat is no part of the affidavit, but simply the evidence of it."

. In the Monroe schoolhouse precinct the same allegations were made as at the Beck's schoolhouse precinct, and the additional charge that the oath was administered by G. W. Smith, one of the judges of the election, and not by the commissioner. The election commissioner testified, as found by the referee, that he had one of the judges read the affidavit to the electors because he had a sore throat; that, after it was read, he would ask the voter if he swore to the fact therein; the affidavit being read to each voter by the judge, and signed over jurats, which had been filled out by the commissioner the night before. Hereon the referee found:

"I find from the proof that each voter at this precinct was legally sworn; that it was immaterial who read the affidavit to the voter; that the voter understood that he was making an oath, and the election commissioner understood that he was administering the oath, and I conclude that said affidavits are legal. and binding."

In the act of requiring the making of the affidavit mentioned, it is to be noted that the elector, after being admitted to the election room, and before being given a ballot, is required to permit the clerks to fill out an affidavit to which he shall subscribe and swear before the election commissioner. The substantial form of the affidavit is then set forth in the statute; and this was the affidavit which in fact the electors signed at each of these precincts and delivered to the election commissioner before receiving their ballots and being permitted to prepare and cast the same. There is no claim made that in either precinct the form of the affidavit to which the electors subscribed their names and which were by them delivered was not in accord with the requirements of the statute. The electors make no claim, nor is any claim made for them, that they were not fully conversant with the exact terms contained in the affidavit which they signed. The fact that the election commissioner required them to hold up their hands and be sworn or failed to do so,

or the fact that the commissioner stated but a portion of the provisions contained in the affidavit required by the statute, are not material where the affidavit was executed and delivered by the electors to the election commissioner, with the intent on the part of the electors to have the same uttered as true and to receive from the said commissioner their ballots, to the end that they might prepare and cast the same. This conclusion is predicated upon section 2182, Comp. Laws 1909, which reads:

"The making of a deposition or certificate is deemed to be complete, within the provisions of this article, from the time when it is delivered by the accused to any other person with the intent that it be uttered or published as true."

The application of this particular section to similar facts is fully made in the case of *Checotah v. Eufaula, supra;* and it is unnecessary to discuss at length the reasons there given. It is sufficient to say that we therein held that the word "deposition" included affidavit, and that, therefore, the affidavits, so far as these electors were concerned, were complete when they were signed and delivered by the electors with the intent that they be uttered or published as true for the purpose of securing their tickets, so that they might prepare and cast their ballots, and that the ballots so received and cast were not void on account of any informality involved in the formal taking of the oath or even its entire omission.

The objections which are presented under the third subdivision are not shown either singly or in the aggregate to have been sufficient to either change the result of the election or to cast substantial doubt upon its result, and, in the absence of either of these conditions, the irregularities mentioned must be deemed immaterial. Counsel in this case place their principal claim for relief upon the fact that the electors were not formally sworn by the commissioners to the affidavits. To this question they devoted practically their entire oral argument, and a discussion of it constitutes the major portion of their brief. The claim in this regard has had our careful attention as have the other propositions presented; but the report of the referee on the facts, being as we find correct, is conclusive thereon, and, the

conclusions of law reached by him being in our judgment sound, the report and finding is accordingly confirmed and judgment is entered accordingly, the place named Jay having been shown to have received a majority of the votes cast by the electors for the permanent county seat of Delaware county.

All the Justices concur.