## *In re* COURTHOUSE OF OKMULGEE COUNTY.

No. 8445.  Opinion Filed November 14, 1916.

(161 Pac. 200.)

1. **COUNTIES—County Board—"Decision"—Review.** The decision of a board of county commissioners, made in determining the proper location of a county courthouse and jail, and which involves a selection between different sites, being judicial in its nature, is a "decision" from which an appeal will lie to the district court, pursuant to section 1640, Rev. Laws 1910, as amended by Act March 11, 1915 (Sess. Laws 1915, c. 117, p. 205).

2. **CONSTITUTIONAL LAW—Counties—"Judicial Power"—"Judicial Act"—"Ministerial."** "Judicial power" is authority to hear and determine, where the rights of persons or property, or the propriety of doing an act, are the subject-matter of adjudication; and a "judicial" act involves the exercise of judgment or discretion. But where the law enjoins a duty, prescribing and defining the time, manner, and occasion of its performance, with such certainty that nothing remains for judgment or discretion, the duty and act are each ministerial.

3. **COUNTIES — County Board — Appeals from Decisions — Notice.** In a proceeding had before the board of county commissioners, involving a contest between the owners of property offered as a donation for a courthouse site, an appeal prosecuted from the action of the board by the county attorney in the name of the county, upon the written demand of 15 freeholders, as authorized in amended section 1640 and section 1641, Rev. Laws 1910, does not require that notice thereof be served upon or given the owners of the site selected.

(Syllabus by the Court.)

*Error from District Court, Okmulgee County;*
*Ernest B. Hughes, Judge.*

In the matter of location of a courthouse in Okmulgee county.  From a judgment dismissing an appeal from a decision of the board of county commissioners locating the site for a county courthouse, the county and certain taxpayers bring error.  Reversed and remanded.

*Wm. M. Matthews,* for plaintiff in error.

*Merwine & Newhouse, Jos. W. Childers,* and *West & Hagan,* for defendants in error.

SHARP, J. May 4, 1916, by a vote of two to one, the county commissioners of Okmulgee county selected as a site for the county courthouse about to be constructed in the city of Okmulgee, Okmulgee county, certain lots in block 110 of said city, owned by James Parkinson, J. D. Brazeel, and Anne Thomas, respectively, and by the same vote declined to consider and accept as a site for said courthouse certain lots in block 59 of said city. These tracts are designated in the record and the briefs of counsel as the Parkinson and Baker sites, and we shall so refer to them. Within 20 days after the action of the board, upon written demand of 75 freeholders of Okmulgee county, the county attorney of said county prosecuted an appeal from the decision of the board of county commissioners in the selection of the Parkinson site, which said appeal was in due time lodged in the district court. Notice of appeal was served upon one member of the board of county commissioners. Thereafter the board of county commissioners and Parkinson, Brazeel, and Thomas filed their respective motions to dismiss the appeal prosecuted by the county attorney for and on behalf of the said freeholders, on the grounds: (1) That no notice of an appeal had been served on either Parkinson, Brazeel, or Thomas; and (2) that the action of the board in selecting a site for the location of the courthouse was not an appealable order.

The power of the board of commissioners to act and the regularity of its proceedings are not brought in question. It appears from the transcript of the proceedings had before the board of county commissioners: That on

the 1st day of May, 1916, a body known as the citizens' advisory board held a meeting for the purpose of selecting a free site for the courthouse and jail. That on said date there had been filed with the county commissioners deeds and abstracts for two lots or parcels of ground, in response to a notice given by said board that all persons offering free sites should file their deeds with the county clerk by 2 o'clock p. m. on said 1st day of May; the sites proposed being as follows: The Parkinson site, situated at the corner of Seminole and Seventh streets; and the Stuart site, situated at the corner of Fifth street and Central avenue. That on said date, between the hours of 2 o'clock and 3 o'clock p. m., both the owners of the Parkinson site and the Stuart site offered to enlarge the respective sites donated by them, but before a vote was taken thereon, one Baker tendered to the advisory board a tract of land at Grand avenue and Fifth street. After said advisory board viewed and inspected said latter site, on a second ballot being taken, the same was unanimously chosen as the courthouse site. Thereafter said Baker, being the owner of said lands so selected, offered and tendered to the county commissioners a deed and abstract covering and embracing the tract of land selected by the advisory committee. Thus it appears that at the time the board acted there was presented to it for its consideration and choice both the Parkinson and Baker sites. From the memorandum of the proceedings had by the board at its meeting of May 4th it seems that said body refused to consider the Baker site, because the offer was filed "one day late in the county clerk's office." The demand served upon the county attorney by the said freeholders contains a recital that prior to the decision by said board there had been filed with the county clerk of Okmulgee county a petition protesting against the selection of the Parkinson site, and

against the county commissioners making the selection of any site on said date, because of what was claimed to be a much more advantageous and desirable site offered by Baker, and that said protest was by said commissioners overruled, disallowed, and rejected in all things.

The statute by which we are to determine the right of the county attorney to prosecute an appeal, as was done in the case at bar, is section 1640, Rev. Laws 1910, as amended by the Act of March 11, 1915 (Sess. Laws, 1915, c. 117, p. 205), which reads:

"From all decisions of the board of commissioners, upon matters properly before them, there shall be allowed an appeal to the district court by any persons aggrieved, including the county by its county attorney, upon filing a bond with sufficient penalty, and one or more sureties to be approved by the county clerk, conditioned that the appellant will prosecute his or her appeal without delay, and pay all cost that he or she may be adjudged to pay in the said district court; said bond shall be executed to the county, and may be sued in the name of the county upon breach of any condition therein: Provided, that the county attorney, upon the written demand of at least fifteen (15) freeholders of the county, shall take an appeal from any action of the board of county commissioners when said action relates to the interests or affairs of the county at large or any portion thereof, in the name of the county, when he deems it to the interest of the county so to do; and in such case no bond shall be required or given, and upon serving the notice provided for in the next section the county clerk shall proceed the same as if a bond had been filed."

It is said by counsel for defendants in error that the word "decisions," found at the beginning of said section, refers only to decisions that are judicial or of a judicial character, and not merely to those that are ministerial, and that, where it is provided in said section that the

county attorney upon demand of the required number of freeholders shall take an appeal from "any action" of the board of county commissioners, the rule *ejusdem generis* is applicable, and that the words "any action" refer to a "judicial decision."

It is unnecessary that we at this time determine whether or not an appeal will lie to the district court from a purely ministerial act of the board of county commissioners when prosecuted by the county attorney, or determine the constitutionality of said provision; for, in our opinion, the action of the board in making a decision between contending forces and in determining the site for the courthouse was of a judicial character, or what is commonly termed "quasi judicial." The right to select a courthouse site includes, necessarily, the power to decide that one site is more suitable than another; to take evidence if necessary, and adjudicate upon the merits of the different locations.

A quasi judicial duty is one lying in the judgment or discretion of an officer other than a judicial officer. When such an officer is charged with looking into and acting upon facts not in a way which the law specifically directs, but after a discretion in its nature judicial, the function is termed "quasi judicial." An act is judicial when it requires the exercise of judgment or discretion by one or more persons, or by a corporate body when acting as public officers in an official character, in a manner which seems to them just and equitable. *State ex rel. Board of Liquidation v. Briede,* 117 La. 183, 41 South. 487; *Grider v. Tally,* 77 Ala. 422, 54 Am. Rep. 65; *Malmo v. Commissioners,* 72 Conn. 1, 43 Atl. 485; *People v. Board of Supervisors,* 35 Barb. (N. Y.) 408; Throop on Public Officers, sec. 553. The location, size, availability, and suitableness

of the Parkinson site called for the exercise of judgment and discretion, as did the right of the board to consider and decide whether or not it would take into consideration the Baker site, or make an independent selection. We know judicially that in the matter of selecting sites for courthouses and jails many things are to be taken into consideration. The question is not to be determined alone by present population, but by the prospective growth of the seat of local government. *Molacek v. White,* 31 Okla. 693, 122 Pac. 523. The size of the grounds, the public convenience, the character of adjacent property, freedom from exposure to fire, and sanitary advantages, all form important factors and call for the exercise of sound business judgment on the part of those officials in charge of the affairs of the county at large. As there was vested in the board the power of choice and selection between the respective sites, the solution of a public question involving a controversy in which citizens differed, and which it was incumbent upon the board to decide, the duty resting upon them was not ministerial; for a ministerial act is one which an official performs in a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment upon the propriety of the act being done. *Marcum v. Lincoln,* 42 W. Va. 263, 26 S. E. 281, 36 L. R. A. 296; *Burnam v. Terrell,* 97 Tex. 309, 78 S. W. 500; *Rainey v. Ridgeway,* 151 Ala. 532, 43 South. 843; *Sullivan v. Shanklin,* 63 Cal. 247; *Mississippi v. Johnson,* 4 Wall. 475, 18 L. Ed. 437; Mechem on Public Officers, par. 657.

What we have said in respect to the quasi judicial acts of the board of county commissioners is not to be construed as holding that such boards in this jurisdiction are not included within the provision of section 1, art. 7, Con-

stitution, vesting the judicial power of the state in the courts named therein, "and such other courts, commissions or boards" as may be established by law. Whether the board of county commissioners comes within the meaning of this section of the Constitution, is a question unnecessary to the decision of the present case.

Section 1640, *supra,* differs not materially from section 37, art. 9, c. 22, of the Statutes of 1893, before the court in *County Commissioners v. Haines,* 4 Okla. 701, 46 Pac. 561, where it was held that the board of county commissioners, in determining that stock should not be restrained, acted judicially, and that an appeal to the district court would lie in such case. That an appeal from the action of the board of county commissioners will lie, where the decision or order appealed from is judicial in its nature, is recognized in *Territory ex rel. Ridings, Co. Atty., v. Neville,* 10 Okla. 79, 60 Pac. 740. In that case it was held that the duty devolved upon the commissioners did not call for the exercise of judgment or discretion, but was one purely administrative in its nature and ministerial in its character. In *Smith v. Board of Commissioners,* 26 Okla. 819, 110 Pac. 669, the plaintiffs in error were taxpayers of Rogers county, and brought a suit in the district court, seeking an injunction against the board of county commissioners enjoining them from letting a contract for the construction of a bridge at a certain point across the Verdigris river. It was contended by the defendants in error that an injunction should not be granted because the plaintiffs in error had an adequate remedy at law; that is, by the statute granting to taxpayers (now freeholders) the right of an appeal from any action of the board of county commissioners affecting the interests or affairs of the county at large. The contention was sus-

tained and the injunction denied, because it was said the plaintiffs had a complete and adequate remedy at law, under the provisions of section 1690, Comp. Laws 1909. It may be noted that the latter section is identical with section 1640, Rev. Laws 1910. The decision of the court was rested upon the opinion of the Supreme Court of Dakota Territory in *Wood et al. v. Bangs,* 1 Dak. 179, 46 N. W. 586. In the opinion, attention was called to the fact that the statute last cited, governing appeals from the action or decision of county boards of commissioners, was substantially the same as that in force in Dakota Territory (chapter 9, art. 7, sec. 610, Code 1887). Learned counsel for defendants in error call attention to the fact that the opinion in *Wood et al. v. Bangs* was rendered in 1875, or long prior to the 1887 compilation of the Dakota statutes. The statute referred to in the Dakota opinion is section 31, c. 4, Laws 1868-69. From the opinion of the court and manuscript copy of the act we are informed that the 1869 statute provided for an appeal to the district court of the county from a decision of the county commissioners, upon all matters properly before them, by any person aggrieved, upon the giving of the bond required. The provision authorizing an appeal by the county attorney upon written demand of taxpayers or freeholders of the county from any action of the board of county commissioners, when said action relates to the interests or affairs of the county at large, or any portion thereof, does not appear to have been at the time of the decision a part of the statute law of Dakota Territory, and hence was not before the court for consideration. But the statute construed was less comprehensive in respect to the right of appeal than section 610 of the 1887 statute, adopted with unimportant modifications by the First Legislative Assembly of the

Territory of Oklahoma (section 37, art. 6, c. 24, Stat. Okla. 1890). Hence we think the force of the opinion as an authority is not destroyed, but, on the other hand, contains a sound exposition of the law.

In *Parker et al. v. Board of County Commissioners of Tillman County*, 41 Okla. 723, 139 Pac. 981, the right of appeal from the decisions of a board of county commissioners involving the exercise of judicial power and discretion, is expressly recognized. Section 7609, Rev. Laws 1910, required that the board of county commissioners should provide all roads improved under the provisions of art. 1, c. 73, Rev. Laws 1910, with suitable bridges of a permanent and substantial character. In the view of the court, the action of the commissioners in building the bridge on the section line was purely ministerial, though the opinion appears to be rested largely upon the informality and insufficiency of the objections urged by certain taxpayers. In the course of the opinion it is said:

"* .* *   that the board of county commissioners in designating the point for the bridge in question were merely exercising an administrative or governmental function, imposed upon them by the law, and that, such being the case, their ignoring or overruling a verbal protest expressed by these individuals did not constitute action and decision upon matters properly before the board from which an appeal would lie to the district court."

The earlier opinion of *Smith v. Board of Commissioners, supra,* is not cited or referred to in the opinion of the court, and from a careful reading of the latter opinion we are convinced that there was no intention to disturb the rule therein announced. Keeping in mind the precise question decided, we think the court in that case reached a correct conclusion, assuming that the bridge was

to be constructed on a road improved, as required by the statute.

The appeal prosecuted by the county, upon the written demand of 75 freeholders, clearly relates to the interests or affairs of the county at large, and is prosecuted as required, in the name of the county. Without intending any expression of opinion as to the action of the board, we think it clear that the freeholders have brought themselves within the protection given them by the statute. To conclude otherwise would be to render meaningless the authority conferring upon the required number of freeholders the right to demand an appeal, where the public interests are involved, and leave to the whims or caprices of the governing body of the county the final determination of many questions of great public importance. It was in such situations that the statute was intended to afford relief.

Upon the question of the right of Parkinson, Brazeel, and Thomas to service of notice of the appeal to the district court, urged in this court by the board of county commissioners, it may be observed that the motion to dismiss on this ground was by the court expressly overruled, and that no appeal from said judgment has been prosecuted. However, aside from the question of practice involved, we do not consider them necessary parties, and fully concur in the judgment of the trial court denying the motion to dismiss on the ground of want of notice.

Section 1640, Rev. Laws 1910, requires that appeals from the decisions of boards of county commissioners shall be taken within 20 days after the decision of the board, "by serving a written notice on one of the board of county commissioners." This was done. But it is said that notice should have been served on James Parkinson,

J. D. Brazeel, and Anne Thomas, the donors of the free site. We do not think so. The acceptance of the donation of Parkinson, Brazeel, and Thomas by the board of commissioners did not vest in them a personal right requiring notice to them of the appeal. The question involved the interests and affairs of the county at large, though at the same time it may have incidentally affected the property owners named, as well as others. The contest was between the board of county commissioners, on the one hand, and the county attorney in the name of the county, on the other hand. It concerned the public interests of the county, and not a mere personal advantage to some of its property owners. It was the board of county commissioners that was called upon to defend its action, and not the owners of affected property. No determination of a private right was involved. In theory, at least, Parkinson, Brazeel, and Thomas were interested only as citizens in the matter of the location of the courthouse. It is doubtful that they could even by contract acquire a private right in such public matters. Their interest was that of citizens desirous of promoting what to them appeared to be the public interests of the county at large. Being so confined in interest, notice to them was unnecessary. The action of the county attorney in prosecuting the appeal is conclusive upon the question that he deemed it to the interest of the county so to do. The case is not ruled by the opinion in *Board of County Com'rs v. Beaver County ex rel. Spohn, Co. Atty.,* 45 Okla. 526, 146 Pac. 434, holding that, when the county attorney, at the request of taxpayers of the county, appeals from an order of the board of county commissioners allowing a claim against the county, notice to the claimant of said appeal is necessary to give the district court jurisdiction of the matter appealed from, as in the

case at hand the right of claimants upon a personal claim against the county is not involved.

From what we have said it is obvious that the trial court erred in dismissing the appeal prosecuted by the county attorney from the action of the board of county commissioners.

The judgment of the trial court is therefore reversed, and the cause remanded, with instructions to the trial court to proceed in the hearing of said appeal, as provided in section 1644, Rev. Laws 1910.

All the Justices concur.