**BOARD OF COM'RS OF SEQUOYAH COUNTY et al. v. McGOWAN et al.**

No. 15281—Opinion Filed Dec. 2, 1924.

1. **Counties—Construction of Bridges—Bond Election—Official Duties as to Engineering Problems.**

Sections 10092, 10199, and 10201, Comp. Stat. 1921, reserve the right to the people of the county in voting on the question of an issue of bonds for the construction of a bridge on a public highway, between given points, to pass upon the question of the need or expediency for the bridge by their vote for or against the proposition. The sections impose the duty of deciding the engineering problems upon the Department of State Highways and the board of county commissioners. The board of county commissioners and the state Department of Highways in making the exact location for the bridge determine the engineering problems involved in the location, and they should take into consideration the matters set forth in the opinion in making the exact location for the bridge on the given highway.

2. **Same—Location of Bridge—Finality of Decision—Appeal.**

The selection of the exact location by the board of county commissioners, as approved by the Department of State Highways, is in

the nature of a judicial decision, from which an appeal lies to the district court. The decision so made by the board of county commissioners, as approved by the state Highway Department, becomes final. unless an appeal is perfected therefrom to the district court.

### 3. Same—Injunction—Reversal.

Record examined: held, to be insufficient to support the judgment rendered in favor of the plaintiffs permanently enjoining completion of the bridge.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Sequoyah County; J. T. Parks, Judge.

Action by A. E. McGowan, Joe Dougherty, and E. L. McCoy against the Board of County Commissioners of Sequoyah County and the Froebe-Gravelle-Hamblin Company to enjoin the construction of a county bridge. Judgment for plaintiffs, enjoining the completion of the bridge and payment for its construction. The construction company and the Board of County Commissioners appeal. Reversed and remanded. with directions.

Stone, Moon & Stewart and T. M. McCombs, for plaintiff in error Bridge Company.

Harry D. Pitchford, for plaintiff in error Board of County Commissioners.

Carlile & Wall, for defendants in error.

Opinion by STEPHENSON, C. The county commissioners of Sequoyah county issued a proclamation, pursuant to section 10092, Comp. Stat. 1921, calling an election for the people to vote on the question of the county issuing its bonds for the construction of several bridges on tne public highways of the county. The section, among other provisions, requires the location of the proposed bridge to be described in the proclamation. The proclamation as issued by the county commissioners sets forth that one of the bridges would be located across Little Sallisaw river, on the section line between sections 23 and 24, on the highway between the towns of Sadie and Sallisaw. The question carried in favor of the issue of the bonds for the construction of the bridges.

The section line on each side of the river, for the distance of about one-fourth of a mile, runs over rough and broken ground. There is a mountain on one side of the line and a deep ravine on the other side for the distance of about one-fourth of a mile, on either bank of the river. The portion of the section line as described has never been used as a public highway on account of the considerable expense required to make a road suitable for travel.

The road as traveled leads off from the section line south of the river, in a northwesterly direction, to a point where it crosses the river. about one-fourth of a mile west of the point where the section line crosses the river. The location of the traveled way is better suited for a public highway than the section line, and can be constructed and maintained as such at much less expense than could a highway over the section line. It appears to be conceded in this case that it would cost a considerably greater sum of money to construct a bridge on the section line than on the detour on account of the necessity of constructing high fills for approaches to the bridge. It appears that the county has already constructed and maintained a highway over the detour fairly suited to the needs of the public in traveling between the two towns. It would require a considerable additional expenditure of money on the part of the county to make a public highway over the section line suitable for public use.

The county engineer, as required by statute. prepared plans and specifications for the location of the bridge on the existing detour, at a point about one-fourth of a mile west from where the section line crosses the river. The plans and specifications were approved by the state Highway Department, adopted by the county commissioners, and filed in the office of the county clerk. The contract was let for the construction of the bridge, and it had been completed to the point of laying the floor, and the material for this purpose was on the ground.

The three plaintiffs, as residents of Sequoyah county. then commenced this action to enjoin the completion of the bridge. and the use of any portion of the proceeds of the bond issue to be paid for the cost of construction. The district court, upon a trial of the cause. issued a permanent injunction against the contractors and the board of county commissioners, prohibiting the completion of the bridge and payment for its construction.

The defendants have appealed from the judgment of the court and assign several of the proceedings had in the trial of the cause, as error for reversal.

(1) Error in overruling defendant's demurrer to the petition. (2) Error in overruling defendant's demurrer to the evidence of the plaintiffs. (3) Error in sustaining the motion of plaintiffs for judgment. (4) That the judgment allowing the injunction

is contrary to the evidence and to the law.

The contention of the plaintiffs, in substance, is that the center line of the bridge must be placed over the section line.

Section 10201, Comp. Stat. 1921, requires the county engineer to prepare a set of plans and specifications showing the estimated cost of the bridge and its "exact location." The plans must be approved by the county commissioners and filed in the office of the county clerk before construction is commenced on the bridge.

Section 10199, Comp. Stat. 1921, provides that the plans and specifications for the construction of a bridge from the proceeds of a county or township bond issue must be approved by the state Highway Department.

Section 10092, supra, in relation to the issuance of the proclamation for a bond election, refers to the place of construction as the "location."

Section 10201, supra, in relation to the preparation of the plans and specifications, which are to be approved by the state Highway Department, refers to the place of construction as the "exact location."

The term "location" as used in the respective sections imports a varying degree of exactness in the matter of the location, as between the terms, as used in the respective sections.

There are two propositions involved in the construction of a bridge on some given route of travel; one is the question of the need or expediency for providing for a bridge for the benefit of the traveling public between given communities; the other, the matter of selecting the proper location for such a bridge from the standpoints of economy and convenience to the public traveling between such given communities.

The first question is to be determined from the volume of traffic passing and properly anticipated between the communities served. This can best be determined by the residents of the county who are familiar with the needs in this respect, and who are afforded an opportunity to express their opinions at the bond issue election.

The second question involves the selection from several possible ones of the point where the bridge should be properly placed to cross the stream and serve the traveling public from the standpoint of convenience and economy. The settlement of this question calls for the service of a man skilled and experienced in construction. The cost of the structure itself may be, and generally is, only a small part of the cost of the road. The location of the bridge and crossing the stream in such a manner as to provide for economy of construction in the bridge, as well as economical construction and maintenance of the highway, and the immediate approaches to the bridge, are properly the duties of skilled and experienced engineers.

The kind and character of the stream banks, its bed, its current, as to speed and direction at various stages of flow, the alignment of the structure with the highway approaching it, the cost of construction and maintenance of roadways to the site, are all technical questions entering into the determination of the economical and convenient location of the bridge, and call for the exercise of the knowledge and skill of a competent highway department. The character of the earth formation over which many of the streams run results in the change of the course of the channels. This condition, the banks of the stream, and the course of the channel, are engineering problems for solution in selecting the "exact location." It is common knowledge that streams in the past have changed their course and left the bridges in a useless place, standing as a mere monument to the errors committed in selecting the particular location.

It appears that the Legislature recognized the difference between the experience and skill required to solve the two propositions. It is apparent that the citizens of the county are as well fitted to settle the question of need or expediency for the bridge as any other class of persons. It is equally apparent that a person trained in the profession of civil engineering, and experienced in construction work, is better fitted than any other person to make the exact location of the bridge to serve the highway for travel between the two given points. The background of these two questions makes it apparent that the Legislature intended that the term "location" as used in the two sections should be given a different meaning. The several sections, when taken together, evidence a purpose on the part of the Legislature to reserve to the people of the county the determination of the question of the need or expediency for a bridge to serve travel on a public highway between two given communities. It is further evidenced by the sections that the Legislature intended and considered the question of the "exact location" as an engineering problem to be considered and settled in the light of the conditions we have discussed. The Legislature has recognized the importance of the engineering problems as involved in the particular location for the bridge by making the services of the state Highway Department available

for the aid of the county engineer in making the "exact location" for the bridge.

It is neither practical nor advisable for the county or state to incur the expense of the survey to determine the "exact location" for the proposed bridge before the question of the issuance of the bonds is voted upon. It would require a considerable expense and time on the part of the employes of the state and county to determine this question, and if the bond issue did not carry it would be useless. We think the purpose and intention of the Legislature in the passage. of section 10092 was to require the county commissioners to describe the location of the bridges to the extent of enabling the citizens of the county to determine what communities the bridges were proposed to serve. This information is sufficient to enable the voters to pass upon the question of the need or expediency for the bridge to serve the travel and traffic over a highway between two given sections. The "exact location" for the bridge to be provided to serve the travel and traffic on some given highway is entirely an engineering problem. The duty rests on the board of county commissioners, and the county engineer, with the approval of the state Highway Department, to select the exact location for the bridge to serve the given highway, under the conditions and circumstances we have set forth. The purpose to be served by giving the location in the proclamation calling the bond election is to enable the voters to pass upon the question of the need for the bridge to serve some given community. It certainly could not have been the intention of the Legislature for the county and state to incur the expense of determining the engineering problems before the question was voted upon by the people. The reference to a section line, or some other natural object in the proclamation, is for the purpose of identifying the proposed bridge with some given highway or locality. The section line. at the most economical cost— which is referred to may run over impassable ground, or even the peak of a mountain. It would be the duty of the county, according to the contention of the plaintiffs, either to tunnel through the mountain or abandon the purpose for which the bonds were voted.

We think it must be the sentiment of the majority of the residents of Sequoyah county that the bridge involved in this action be located in the most suitable place across the river to serve travel and traffic on the given highway at the most economical cost under all conditions.

It would be unreasonable to assume that the residents and voters of Sequoyah county intended that the bridge be placed on the section line at an extremely greater cost than would be required to construct the bridge at a point a few hundred yards away, where the road and approaches could be constructed and maintained at a much less cost. DeHasque v. Atchison, T. & S. F. Ry. Co., 68 Okla. 183, 173 Pac. 73; Cherokee County Publishing Co. v. Cherokee County, 48 Okla. 722, 151 Pac. 187; Blevins v. W. A. Graham, 72 Okla. 308, 182 Pac. 247; McGannon v. State ex rel. Trapp, 33 Okla. 145, 124 Pac. 1063; Town of Grove v. Haskell, 31 Okla. 77, 116 Pac. 805; Board of Com'rs of Tulsa County v. McMahan, 26 Okla. 502, 110 Pac. 1115.

The consideration of the several elements which enter into the determination of the engineering problems calls for the exercise of judgment and discretion upon the part of the board of county commissioners. The judgment reached by the board of county commissioners, as approved by the Department of Highways, in making the "exact location" for the particular bridge, is in the nature of a judicial decision. An appeal lies from the judgment of the county commissioners to the district court and constitutes an adequate legal remedy in favor of any aggrieved resident of the county. In re Court House of Okmulgee County, 58 Okla. 683. 161 Pac. 200; Smith v. Board of Com'rs of Rogers County, 26 Okla. 819, 110 Pac. 669; Wood et al. v. Bangs et al., 1 Dak. 179, 46 N. W. 586.

The selection of the exact site for a bridge, as approved by the state Highway Department, is a judgment upon the part of the board of county commissioners, which becomes final and binding upon every one, unless an appeal be perfected therefrom to the district court. The judgment cannot be attacked collaterally, except upon grounds authorized for the attack of a judgment rendered by a court of general jurisdiction.

The record in this case reasonably shows that the county commissioners of Sequoyah county and the state Highway Department selected the location for the bridge involved in this case according to law. Neither the petition nor the proof of the plaintiffs establishes grounds for relief in their favor. The plaintiffs cannot question the selection of the site by the board of county commissioners, as approved by the State Highway Department, in an equitable proceeding for an injunction, except upon grounds where relief would be granted against a judgment found by a court of general jurisdiction. The plaintiffs, if they were aggrieved by

the action of the county commissioners, were afforded ample relief at law by way of an appeal from the judgment of the commissioners to the district court. Fast v. Rogers, County Treas., 30 Okla. 289, 119 Pac. 241; Board of Com'rs of Muskogee County v. Dudding, 62 Okla. 51, 160 Pac. 109.

It is recommended that the judgment of the district court be reversed and remanded, with directions to dismiss the action of the plaintiffs.

By the Court: It is so ordered.