Note.—See under (1) 3 C. J. p. 839 § 746. (2) 29 Cyc. pp. 883, 886, 899, 900, 901, 911, 918; 20 R. C. L. p. 200; 3 R. C. L. Supp. p. 1051; 4 R. C. L. Supp. p. 1351; 5 R. C. L. Supp. p. 1096. (3) 29 Cyc. p. 885. (4) 29 Cyc. p. 996; anno. L. R. A. 1918E, 528; 6 R. C. L. 560; 2 R. C. L. Supp. p. 155; 5 R. C. L. Supp. p. 355.

---

## WARD et al. v. BOARD OF CO. COM'RS et al.

No. 17175—Opinion Filed March 30, 1926.

Rehearing Denied May 4, 1926.

(Syllabus.)

1. **Counties—Right of Taxpayers to Restrain Creation of Illegal Debt—Official Discretion.**

A taxpayer may invoke the aid of a court of equity to prevent the illegal creation of a debt; however, there is a distinction between an illegal act upon the part of officers charged with the duty of passing upon certain facts necessary for the determination of proceedings relating thereto, and the mere error of judgment on the part of such officers.

2. **Same—Bond Election for Courthouse—Sufficiency of Taxpayers' Petition—Findings of County Board—Collateral Attack.**

Where the board of county commissioners has before it a petition requesting that said board issue a call for an election to determine whether such board shall be authorized to issue such bonds, for the erection of a courthouse and jail, and such board determines that such petition contains the requisite number of names as required by section 5819, C. O. S. 1921, and no appeal being taken from such finding, then such finding, in the absence of fraud or collusion, is not subject to collateral attack.

3. **Same—Validity of Bond Issue Where Amount Voted on was Less than Amount in Petition.**

Where a petition is presented to the board of county commissioners, requesting that they call an election for the purpose of submitting to the voters a bond issue in the sum of $200,000, and the board finds that a less

sum is adequate and issues a call for an election to determine whether the board shall be authorized to issue bonds in the sum of $150,000, such reduction in the amount submitted to the voters does not invalidate the proceedings in relation thereto.

Error from District Court, Okfuskee County; John L. Norman, Judge.

Action by James Ward and others against the Board of County Commissioners of Okfuskee County, and another. Judgment for defendants. and plaintiffs appeal. Affirmed.

James C. Davis, for plaintiffs in error.

E. N. Catlett, Co. Atty., W. A. Ratterree, Asst. Co. Atty., Wright & Frerichs, White & Nichols, Lydick & McPherren, and M. E. Jordan, for defendants in error.

LESTER, J. This case presents error from the district court of Okfuskee county, Okla., and the parties appear the same as in the district court.

The plaintiffs, as resident taxpayers of Okfuskee county, brought an action to restrain the county commissioners of Okfuskee county, and the county treasurer thereof, from negotiating, selling, or disposing of certain bonds in the sum of $150,000, which bonds the plaintiffs allege are illegal and unauthorized and if sold or otherwise disposed of will create an illegal tax burden against the plaintiffs. The petition of the plaintiffs alleges a large number of irregular and unauthorized acts upon the part of the county commissioners in the proceedings calling an election for a bond issue for the purpose of erecting a courthouse and jail in Okuskee county. A demurrer to said petition was filed by the defendants in said action, and the court, after hearing the said demurrer, sustained the same and adjudged that the petition of plaintiffs be dismissed, to which action of the court the plaintiffs duly excepted.

The plaintiffs elected to stand on their petition, and prosecute this appeal to reverse the action of the court below. Briefly, it is shown in the plaintiffs' petition that a petition was presented by taxpayers and electors of Okfuskee county, Okla., requesting the board of county commissioners of Okfuskee county, Okla., to call an election for the purpose of issuing bonds to erect a courthouse and jail in said county.

It was alleged by the petitioners that said petition was not signed by one-sixth of the qualified taxpaying voters of said county. Plaintiffs further allege that the petition, as presented by the petitioners to the board of county commissioners of Okfuskee county, requested an election to be held on the proposition of issuing bonds to the amount of $200,000, for the erection of a courthouse and jail in said county, and that, in lieu thereof, the commissioners called an election for the purpose of authorizing the commissioners to issue bonds for the erection of a courthouse and jail in the sum of $150,000. It is further shown by the petition of the plaintiffs that the county commissioners in prescribing the qualifications of voters did not require, as a qualification of voting in said election, that they be taxpaying voters. It is further shown by the petition of the plaintiffs that 1,463 voted in favor of the issuance of the bonds and 172 against said proposition. It is further shown by the plaintiffs' petition that the board of county commissioners of Okfuskee county adopted a resolution in which it is recited:

"Whereas a petition has been submitted to this honorable board of county commissioners, by more than one-sixth of the qualified electors and taxpayers of Okfuskee county, Okla., as shown by the last preceding enumeration of said county, on this the 23rd day of September, 1925, requesting this honorable board to call an election to submit to the people of the county and the voters of the county to vote to authorize the sale of bonds in the sum of $150,000 for the erection of a courthouse and jail in Okfuskee county."

It is further shown by Exhibit "B" of plaintiffs' petition that the board of county commissioners of Okfuskee county, state of Oklahoma. met in regular adjourned session in the office of the county clerk of Okfuskee county, Okla., at Okemah, the county seat of said county, on the 23rd day of September, 1925, at 10 o'clock a. m.

"Present:    Ed Stine _____Chairman.
             Joe Cecil _____Commissioner.
             L. O. Lockhart __Commissioner.
"Absent:    None.

"L. O. Lockhart, commissioner, made a motion that inasmuch as a petition had been directed to the board of county commissioners of Okfuskee county, Oklahoma, and signed by more than one-sixth of the qualified electors of Okfuskee county, Oklahoma, for the said board to call a special election to vote a bond issue in the sum of $150,000 for the purpose of erecting a courthouse and jail in Okfuskee county, Oklahoma, that said board of county commissioners cause to be made upon the records of their proceedings the following statement. * * *"

It is further shown by plaintiffs' petition that on the 30th day of December, 1925, the Attorney General, ex officio bond commis-

sioner of the state of Oklahoma, approved said bonds.

The plaintiffs in their brief present several questions, which we will dispose of in the order named therein. The first question presented by plaintiffs' petition is whether a suit of injunction is a proper and appropriate remedy by taxpayer to enjoin the creation of an illegal public indebtedness. The plaintiffs cite the case of Woodruff v. Wallace, 3 Okla. 355, 41 Pac. 357. In that case, on page 370, the court said:

"It may, we think, be safely asserted that a court should in all instances, where no adequate remedy at law exists, afford relief by injunction. It is a remedy which will readily adapt itself to meet any exigency which may arise between parties who are in litigation. The only inquiry which a court need make is, Has the court jurisdiction of the parties and subject-matter of litigation, and is there a speedy and adequate remedy at law? If the jurisdiction obtains and the law has not provided a proper remedy, the court should unhesitatingly act, by injunction, to the full extent necessary for the protection of the parties."

Plaintiffs also cite the case of Harlow v. Board of County Commissioners, 33 Okla. 353, 125 Pac. 449, in which the court said:

"And plaintiff, being a resident taxpayer, may invoke the aid of a court of equity to prevent the illegal creation of a debt for the construction of the bridge, and of the illegal disposition of the money in the payment of such debt. Hannan v. Bd. of Education of City of Lawton et al., 25 Okla. 372, 107 Pac. 646, 30 L. R. A. (N. S.) 214; City of El Reno et al. v. Cleveland-Trinidad Paving Co., 25 Okla. 648, 107 Pac. 163, 27 L. R. A. (N. S.) 650; Bowles v. Neely et al., 28 Okla. 556, 115 Pac. 344.

We fully agree with the wholesome doctrine that a taxpayer has such an interest in the creation of an illegal public debt that he may invoke the aid of a court of equity to prevent such act. For if such indebtedness is created, it will ultimately become a charge and a burden on the property of the taxpayer.

The next inquiry that presents itself is whether the proceedings upon the part of the commissioners in the instant case were illegal or erroneous, and if erroneous only, where their findings of facts, which they made, in the absence of an appeal therefrom, render such findings illegal and thereafter subject to collateral attack in a court of equity. The statute which authorizes the county commissioners to call an election for the purpose of authorizing the board of coun-

ty commissioners to issue bonds for the purpose of purchasing or erecting a courthouse or jail is to be found in section 5819, C. O. S. 1921, and is as follows:

"Whenever the board of county commissioners of any county considers it to be to the best interests of the county to purchase or erect a courthouse or jail, they shall have power to contract for the purchase or erection of same, and to issue bonds in payment therefor; provided, however, that the bonds shall not be issued until the question shall have first been submitted to the people of the county and a majority of the qualified property taxpaying voters voting at any general election or special election called by the board of county commissioners for the purpose, shall have declared by their votes in favor of issuing such bonds; provided, however, that no such election shall be ordered unless a petition, stating the purposes for which the bonds are to be issued, and signed by at least one-sixth of the qualified electors and taxpayers, as shown by last preceding enumeration of said county, shall have been presented to the county commissioners praying that a vote be taken for the issuing of such amount of bonds as may be asked for therein."

It is contended by the plaintiffs that the petition presented to the board of county commissioners, requesting them to call an election for the purposes named in section 5819, C. O. S. 1921, did not contain one-sixth of the qualified electors and taxpayers of Okfuskee county as shown by the last preceding enumeration of said county. The petition so presented to the board of county commissioners, omitting the names thereon, is as follows:

"We, the undersigned, qualified electors and taxpayers of Okfuskee county, Okla., hereby petition the board of county commissioners of said county and state to call an election for the purpose of voting upon a bond issue of $200,000, the same being for the erection of a courthouse and jail at the county seat, at Okemah, Okla."

This petition was signed by 1,202 persons, representing themselves to be qualified taxpaying voters of said county. It was alleged in plaintiffs' petition:

"That the whole number of resident taxpayers of said Okfuskee county, Okla., as shown by the last enumeration of said county preceding the filing of said petition, and preceding the pretended and attempted act of said board of county commissioners in calling said election, was and is at least 4,522."

Thus it will be observed that the number of taxpayers as alleged in plaintiffs' petition was 4,522, but the plaintiffs do not assert or

allege in their petition that the same were qualified electors within the said county.

The board of county commissioners, having jurisdiction of the petition presented to them for consideration, passed upon the sufficiency of said petition in the manner as shown by Exhibit "B" attached to the plaintiffs' petition:

"The board of county commissioners of Okfuskee county, state of Oklahoma, met in regular adjourned session in the office of the county clerk of Okfuskee county, Okla., at Okemah, the county seat of said county, on the 23rd day of September, 1925, at 10 o'clock a. m.

"Present: Ed Stine, Chairman; Joe Cecil, Commissioner; L. O. Lockhart, Commissioner.

"Absent: None.

"L. O. Lockhart, commissioner, made a motion that inasmuch as a petition had been directed to the board of county commissioners of Okfuskee county, Okla., and signed by more than one-sixth of the qualified electors of Okfuskee county, Okla., for the said board to call a special election to vote a bond issue in the sum of $150,000 for the purpose of erecting a courthouse and jail in Okfuskee county, Okla., that said board of county commissioners cause to be made upon the records of their proceedings the following statement. * * *"

The plaintiffs further attach Exhibit "A" to their petition, being a resolution adopted by the board of county commissioners, which resolution is in part as follows:

"Whereas a petition has been submitted to this honorable board of county commissioners signed by more than one-sixth of the qualified electors and taxpayers of Okfuskee county, Okla., as shown by the last preceding enumeration of said county, on this the 23rd day of September, 1925, requesting this honorable board to call an election to submit to the people of the county and the voters of the county to vote to authorize the sale of bonds in the sum of $150,000 for the erection of a courthouse and jail in Okfuskee county, Okla., and;

"Whereas, the honorable board of county commissioners of Okfuskee county, Okla., consider it to be to the best interests of Okfuskee county, Okla., to erect a courthouse and jail. * * *"

Thus it will be seen that the board of county commissioners, when the petition requesting an election to be called to authorize an issuance of bonds for the purpose of erecting a courthouse and jail was before them, determined that the petition had been signed by more than one-sixth of the qualified electors and taxpayers of Okfuskee county,

Okla., as shown by the last preceding enumeration of said county.

Section 1, chapter 43, Senate Bill No. 91, Session Laws 1923, provides:

"Section 5834, of chapter 35, of the Compiled Oklahoma Statutes 1921, is hereby amended to read as follows:

"From all decisions of the board of commissioners, upon matters properly before them, there shall be allowed an appeal to the district court by any persons aggrieved. * * *"

No appeal having been taken from the findings of the board of county commissioners on this particular question, in our judgment such findings of the board of county commissioners on this point, in the absence of fraud or collusion, cannot be attacked in a collateral proceeding.

In the case of Means v. Vernon, 108 Okla. 123, 235 Pac. 163, it is said that:

"All duties of public officials are either ministerial or judicial. A ministerial duty is one described and defined by law with such precision as to leave nothing to the exercise of judgment or discretion."

In the case of In re Courthouse of Okmulgee County, 58 Okla. 683, 161 Pac. 200, Mr. Justice Sharp, in considering a case involving the location of a courthouse, said:

" 'Judicial power' is authority to hear and determine, where the rights of persons or property, or the propriety of doing an act, are the subject-matter of adjudication; and a 'judicial' act involves the exercise of judgment or discretion.

"The decision of a board of county commissioners made in determining the proper location of a county courthouse and jail, and which involves a selection between different sites, being judicial in its nature, is a 'decision' from which an appeal will lie to the district court. * * *"

In the case of Board of Commissioners of Sequoyah County v. McGowan, 104 Okla. 283, 231 Pac. 258 this court said:

"An appeal lies from the judgment of the county commissioners to the district court and constitutes an adequate legal remedy in favor of any aggrieved resident of the county. In re Courthouse of Okmulgee County, 58 Okla. 683, 161 Pac. 200; Smith v. Board of Com'rs of Rogers County, 26 Okla. 819. 110 Pac. 669; Wood et al. v. Bangs et al., 1 Dak. 179, 46 N. W. 586."

The plaintiffs contend that the board of county commissioners was without power to order an election on the proposition to issue bonds in the sum other than $200,000. being

the amount named in the petition. The question here presented is whe..her the board of county commissioners is authorized to call an election for an amount less than that named in the petition. On this particular proposition plaintiffs cite 20 Corpus Juris, 96, and McElroy v. State (Tex. Cr. App.) 47 S. W. 359. Owing to the fact that we consider this proposition important, we here cite the authority submitted by the plaintiffs found in 20 Corpus Juris, 96:

"Upon the presentation of a proper petition, where the statute makes that a condition precedent, the authorities appointed to call an election on particular measures or propositions have no discretion to refuse to call it. It has been held that in the absence of such an order no valid election can be held; but it has also been held that a failure to issue such an order is not alone sufficient to render an election void. After the sufficiency of the petition has been passed upon by the proper authority and the order has been made, the decision is not open to collateral attack, especially where an election has been held under the order and in other respects according to law, and an order made under the assumption that the preliminary proceedings are sufficient is conclusive until set aside by certiorari. The question must be stated in the order substantially as it is stated in the petition. However, some variances have been held not to invalidate the election. It seems that there is no constitutional reason why the Legislature may not authorize the submission of two or more propositions to the vote of the people at the same time."

We have examined the other authority cited by the plaintiffs on this proposition, and find that it is not in point. The precise question as to whether a board of county commissioners may in its judgment call an election for an amount less than that named in the petition has never been before this court.

In the case of Hull v. Board of County Commissioners (Ind.) 143 N. E. 589, the court said:

"The order of the board of county commissioners in proceedings for the establishment of a highway under the County Unit Road Law ordering the issuance of bonds in denominations smaller than those first ordered issued, and bearing six per cent. instead of five per cent., as allowed by the amendment to the act, held final where no remonstrance or objection filed as required."

In the case of Johnson v. Board of Supervisors (Miss.) 74 South. 321, the court says:

"The contention that the board of supervisors were not authorized to issue bonds for a less sum than the sum indorsed by the electorate is unsound. We think the board of supervisors, under its plenary powers and jurisdiction over roads, may order the issuance of any sum within the limits of the statutory amount, although the electors may ask for the maximum amount."

We have examined other authorities, and find that boards may in their discretion submit a call for an election upon an amount less than that asked for by the petition, apparently upon the theory that they had determined that a less amount was adequate and such action would not prejudice the rights of the taxpayers.

It is contended by the plaintiffs that in the call issued by the board of county commissioners for an election on the part of the proposed bond issue it prescribed the qualifications of voters in said election, but omitted to state one of the necessary qualifications as contained in section 5819, C. O. S. 1921, which requires that the bonds shall not be issued until the question shall have been first submitted to the people of the county and a majority of the qualified property taxpaying voters voting at any such election shall vote in favor of such proposition, and plaintiffs insist that such proclamation should have shown that only the qualified property taxpaying voters should be permitted to vote therein. We do not find that it is the duty of the board of county commissioners in calling election for such proposition to designate the qualifications of electors therein, and whatever qualifications the board of county commissioners prescribe in its proclamation was surplusage and without authority.

We have carefully and diligently examined the petition of plaintiffs, and nowhere do they allege that the bond issue did not receive the assent of three-fifths of the voters thereof in said election, as provided by section 26, art. 10, of the Constitution of Oklahoma, nor do the plaintiffs state or allege that the proposition failed to receive a majority of the qualified property taxpaying voters voting at said election, as prescribed in section 5819, C. O. S. 1921. Therefore, for this reason, much of the argument presented in plaintiffs' brief is irrelevant.

It is contended that on account of the acts of Honorable John L. Norman, district judge in and for said county and sta‘e, in having the election boxes opened in order that it might be determined and ascertained in a court of equity the result of said vote, that on account of the said John L. Norman being a taxpayer of said county and sta.e, he was thereby disqualified from acting in

the premises. It is not shown in the petition that the acts or proceedings had under the jurisdiction of the said district judge in any manner or way changed the result of said election. As shown by the petition, the total number of persons voting at said election was 1,645, and of said number 1,463 persons voted in favor of said proposition, and 172 against said proposition, and it is not, therefore, shown that the proceedings had under said John L. Norman in any manner changed or affected such result.

Finding no error in the action of the court below, the judgment is affirmed.

NICHOLSON, C. J., and HARRISON, MASON, PHELPS, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 15 C. J. pp. 641, 642. § 353. (2) 20 C. J. p. 96 § 79. (3) 20 C. J. p. 96. § 79.